THE STATE *ex rel.* WATERS-PIERCE OIL COMPANY V. BAGGOTT, *Coal Oil Inspector.*

1. **Inspector of Petroleum** : WAGON-TANKS : STATUTE. It is the duty of the inspector of petroleum, under Revised Statutes, sections 5842 and 5839, after having inspected the oil in bulk in large tanks or reservoirs and found it to be of the statutory standard for illuminating purposes, to see the same placed in wagon-tanks when presented for that purpose and to gauge and brand such tanks.

| 96 | 63 |
| 118 | 73 |
| 96 | 63 |
| 123 | 540 |
| 96 | 63 |
| 74a | 217 |
| 96 | 63 |
| 80a | 219 |

2. ———— : ONE INSPECTION. The statute contemplates but one inspection and retail dealers may purchase from branded tanks or packages and sell the same to consumers without any further inspection or branding.

3. ————. It is the duty of the inspector to inspect the oil contained in a tank for vending purposes on the premises of a dealer and if found to be of the statutory standard to properly gauge and brand the same.

4. ————. The inspector can gauge and brand packages of oil without testing it only when it has been tested in bulk and transferred to the packages under his eye.

5. **Mandamus** : AMENDMENT OF PETITION. Where, by the return to an alternative writ of *mandamus*, it appears that the defendant, a petroleum inspector, is legally bound to inspect and brand certain tanks, but not all the tanks prayed for, the prayer of the petition may be amended by striking out so much as relates to the latter tanks and the relief can be granted as to the former.

6. ———— : ————. The article of the practice act relating to amendment of pleadings applies to writs of *mandamus*. (R. S. sec. 3585).

*Mandamus.*

WRIT AWARDED.

*C. P. & J. D. Johnson* for relator.

(1) If inspections are only to be made of oils contained in wooden barrels, or packages of similar construction, and only such barrels and packages are to be gauged and branded, then, under the law, it is illegal to sell the oils in or from other kinds of packages. There is nothing in the statute to indicate such intention. So far as the inspections are concerned, section 5842 expressly provides that inspections may be made of oils in large tanks or reservoirs, thus negativing the claim that they were only to be made in "wooden packages or packages of similar construction." That it was not the intention of the lawmakers to limit inspections or sales of oils in or to any particular kind of package, is evident from sections 5849, 5842, 5845, and 5852 of the statute. (2) Inasmuch as sales of the oils in question cannot be legally made unless they have been inspected and branded in the manner provided for without the seller incurring a penalty, the statute is in restraint of trade, as well as penal in its operation, and being so must be strictly construed. So that nothing short of clear prohibition against sales of the oils in or from certain kinds of receptacles would make such sales illegal. *Sewell v. Jones,* 9 Pick. 414 ; *People v. Reilly,* 50 Mich. 384 ; *Green v. Holway,* 101 Mass. 243 ; *Comm. v. Railroad,* 124 Mass. 561 ; *People v. Peacock,* 93 Ill. 172 ; *State v. Lovell,* 23 Iowa, 304 ; *Cearfoss v. State,* 42 Md. 403 ; Bishop on Stat. Crimes [2 Ed.] sec. 194. (3) If any doubt exists about the proper construction of the statute under consideration, then the interpretation which has been given it by the respondent and his predecessors in office, for years past, may be taken into consideration by the court in resolving that doubt. The

rule upon this point has been clearly stated as follows : "Long and uninterrupted practice under a statute, especially by officers whose duty it was to execute it, is good evidence of its construction, and such practical construction will be adhered to, even though, were it *res integra*, it might be difficult to maintain it." *Harrington v. Smith*, 28 Wis. 68 ; Cooley's Const. Lim. 83, 84 ; *Scanlan v. Childs*, 33 Wis. 666 ; *Bruce v. Schuyler*, 4 Gilm. [Ill.] 221 ; *Boyden v. Brookline*, 8 Vt. 286 ; *Schoff v. Bloomfield*, 8 Vt. 478 ; *Rogers v. Goodwin*, 2 Mass. 476 ; *Board v. Bunting*, 12 N. E. Rep. 151. (4) Inspected oils, it follows from what has already been said; can be sold out of a branded wagon-tank direct to consumers in open measures. (5) The statute (R. S. secs. 5837 and 5842) requires the inspector, who has made an inspection of oils in a large tank or reservoir, which is intended to be sold for illuminating purposes, and which is found to be "approved standard oil," to see such oil filled into small metal store-tanks of retail dealers, by seeing them transferred from the large reservoir to wagon-tanks, the latter driven to the places of business of the retail dealers, within the territorial jurisdiction of the inspector, and the oils transferred in open measures to the small store-tanks, and to properly brand the latter so that sales may be made therefrom in small quantities to dealers.

*A. & J. F. Lee* for respondent.

(1) Neither a tank-wagon nor a stationary oil-tank is a barrel or package within the meaning of those words, as used by the legislature before either the tank-wagon or stationary tank was known ; and therefore respondent is not obliged to brand either of them as such. (2) The oil inspected in bulk must be drawn into a package in which it is intended to be sold, that section contemplating a sale by package in the first instance, at least,

of such inspected oil. (3) The sales, as stated by the record made by the relator, from its tank-wagons, are not sales of oils in those wagons. (4) After oil is inspected in bulk and filled into a storage tank by some person unknown to the respondent, the inspector cannot, on the day succeeding, be required to gauge and brand such storage tank. The great inconvenience and loss which the relator fears would result to the community from the continuance of the system by which eighty per cent. of the oil business has been always heretofore carried on in the larger cities and towns of the country, and, it will be conceded, universally adopted in the smaller towns and villages, must be purely imaginary. The respondent conceives his duty is complied with when the dealer and the purchaser for consumption and the branded package containing the inspected oil are present together, when the sale is made. Such a sale of oil gives the purchaser all the means of information which the law intended he should have; no subsequent sale being intended, the purpose of the whole law has been accomplished and further inspection would be useless. (5) The writ of *mandamus* cannot be invoked against a public officer except where the relator has a clear legal right of which he is deprived and no adequate remedy. The court must believe that under all the circumstances, with a proper regard for the public interest, the writ should be issued. *People v. Railroad*, 62 Ill. 510; *Mansfield v. Fuller*, 50 Mo. 338; *People v. Ketchum*, 72 Ill. 212; *State ex rel. v. Railroad*, 77 Mo. 147.

BLACK, J.—The respondent, in compliance with the stipulation of the parties to this suit, pleaded to the petition, treating it as an alternative writ of *mandamus*. The relator demurred to the return and the case stands on this state of the pleadings. The relator is a corporation engaged in refining petroleum oils in the city of St.

Louis, and William Baggott, the respondent, is the state inspector of such oils for that city.

The facts, as admitted by the pleadings, are these: The relator has a large tank or reservoir, in which oils for illuminating purposes are stored. A practice had grown up by which the oil was inspected in the reservoir and then, under the eye of the inspector, transferred to wagon-tanks, holding from two hundred and eighty-five to five hundred and eighty-five gallons; and these wagon-tanks were then gauged and branded by the inspector. The oil was then hauled to the retail dealers and sold to them from the wagon-tanks and placed in small metal store receptacles which were not branded by the inspector. On the ninth of April, 1888, Baggott inspected a sufficient quantity of oil in the reservoir to fill the relator's wagon-tanks, to the number of twenty or more, and found it to be of the statutory standard for illuminating purposes; but he declined to see the same placed in the wagon-tanks, which were then produced and at hand, and he also declined to gauge and brand the same. It is conceded that the relator intended, in good faith, to haul the oil to the retail dealers and there sell it to them from the wagon-tanks. The respondent admits it to be his duty to inspect the oil in the reservoir in bulk; but he contends that he is only required to gauge and brand it when in barrels "composed of wooden staves and heads, bound with hoops, or in packages of similar construction." His claim, put in a practical shape, is, that the retail dealer can only sell from a branded barrel or branded package, and that it is this package from which the retail dealer must sell, and this only, which he is required to brand.

The material portions of the Revised Statutes of 1879, the subsequent amendments not affecting these questions, are as follows:

Sec. 5839: "It shall be the duty of the inspector or his deputy, when called upon for that purpose by the

owner, manufacturer of, or dealer in any of the oils or fluids specified in the preceding section, to promptly inspect, gauge and brand the same within the city * * * for which he is appointed. When the oil or fluid is contained in a barrel or other small package, he shall take the sample with which to make the test from the package to be inspected, gauged and branded, and in no case shall he mark or brand any package before inspecting the contents thereof in the manner herein prescribed. * * * ''

Sec. 5840: '' * * * All oils or fluids, when once inspected, gauged and branded as aforesaid, shall not again be subject to inspection in this state.''

Sec. 5842: ''It shall be the duty of the inspector, when requested so to do by the owner, or the person having charge of the same, to inspect any of said oils or fluids specified in section 5838, contained in large tanks or reservoirs, by making a single test in the manner prescribed by this article; provided that the sample with which the test is made, shall be taken from the top of the tank or reservoir; and provided, further, that after making such inspection in bulk, the inspector, or his deputy, shall see the oil or fluid so inspected placed in the packages in which it is intended to be sold, and shall properly gauge and brand said packages in the manner provided for.''

Sec. 5843: ''If any person shall sell to any other person whatever, any of said oils or fluids for consumption for illuminating purposes within this state, before first having the same inspected as aforesaid, * * * he shall be deemed guilty of a misdemeanor, and upon conviction thereof, punished by a fine not exceeding three hundred dollars, and imprisonment in the county jail for thirty days.''

Section 5849 fixes the fees for inspecting, gauging and branding as follows: ''For each barrel, or larger package, the sum of twelve cents; for each small package,

the sum of six cents ; and when an inspection in bulk is made in the manner provided for in section five thousand, eight hundred and forty-two, the sum of twelve cents for each barrel or other package filled, gauged and branded, according to the provisions of said section."

1. The point made by the respondent, that the oil must be put in barrels, or other wooden casks of like construction, before being branded, is technical and without merit. Illuminating oils were thus transported to and sold in our market when these statutes were first passed ; but it does not follow that there can be no deviation from that method of transportation and sale. The legislature has expressed no intention to prohibit better and safer methods of transportation and storage. The statute speaks of barrels and packages ; and in section 5840, which provides for attaching the brand or device, packages only are mentioned. It is clear that the word "package" is used in a broad and general sense, and that it not only includes barrels, but casks and small tanks as well. Nor does the statute fix any specific limit upon the number of gallons of fluid these packages may contain, for it speaks of barrels, and of larger and smaller packages. Perhaps the equity of the statute is, that, when the oil is tested in bulk, the fee for testing, gauging and branding should be at the rate of twelve cents for each ordinary barrel of fluid. But however that may be, the fluid may, when tested, be put into barrels, casks, or wagon-tanks of the character described in these pleadings, and it is the duty of the inspector to brand these barrels, casks and wagon-tanks.

If the oil should be put into a barrel and then branded, no one could reasonably question the right of the owner to put the barrel on wheels and peddle out the contents to his customers, who are consumers ; and we see no reason why the same thing may not be done by the more convenient method of a wagon-tank. The

question then is, whether sales may not be thus made to grocers and small dealers, without a new inspection. Section 5842, which makes it the duty of the inspector to test the oil in "large tanks or reservoirs," provides that he shall see the oil "placed in packages in which it is intended to be sold." Sold to whom, the consumer, or the retail dealer? The statute does not say. The oil can, of course, only be branded, by branding the cask; but the statute is express in saying that when once inspected, gauged, and branded, it shall not again be subject to inspection in this state. We fail to find anything in the statute which prohibits the transfer of the fluid, in whole or in part, from a branded cask to an unbranded receptacle, or which prohibits the sale of it from such unbranded receptacle. Unless the law so declares, it may be done. *Woodworth v. State*, 4 Ohio St. 488; *Cheadle v. State*, 4 Ohio St. 478.

The argument against this conclusion of most merit is, that the detection of violations of the law will be rendered difficult. This may be true, to some extent; but it is not the test by which the statute must be tried. The theory of the respondent would prevent the sale of oils, designed for illuminating purposes, in any other way than in branded packages; so that the consumer would be required to buy a whole package or none. The law does not prohibit breaking bulk after inspection, for purposes of sale, and one inspection is sufficient, and we conclude the retail dealers may purchase from branded tanks, and sell the same to consumers without any other or further inspection or branding.

2. It also appears that the relator has on his premises a small store-tank of the capacity of fifty-seven gallons, which is used for the purpose of vending oil therefrom, by open measure, in small quantities, to consumers. To enable the relator to thus sell oil therefrom it requested the respondent to inspect the oil in the tank, and gauge and brand the tank, which respondent

refused to do. It follows from what has been said that it was his duty to inspect the oil, and, if found to be of the statutory standard, to gauge and brand the tank.

3. As to the third and further claim it is sufficient to say that it relates to three small tanks on premises other than those where the large reservoir was located. It must be taken as admitted that the inspector did not see, and had no opportunity to see, that the inspected oil in the reservoir was actually transferred to these tanks. He was, therefore, not bound to gauge and brand them without an inspection or test. He can only gauge and brand the packages, without a test, where the oil has been tested in bulk, and removed to the packages under his eye.

4. It has been several times held that the peremptory writ of *mandamus* must, in all substantial respects, follow the alternative writ; so that if the alternative writ commands the doing of several things, the relator, to be entitled to the peremptory writ, must show that he is entitled to the performance of all of them. *State ex rel. v. Railroad*, 77 Mo. 144 ; *School District v. Lauderbaugh*, 80 Mo 190. But the article of the practice act, concerning amending pleadings and proceedings, applies to writs of *mandamus*. R. S., sec. 3585. It is proper practice to amend the alternative writ so that it and the peremptory writ will correspond. High on Ex. Legal Rem. [ 2 Ed.] sec. 519 ; *State ex rel. v. Francis*, 95 Mo. 44.

We take what is said in the relator's printed argument to be a sufficient request to amend the pleadings. The prayer of the petition will be amended by striking out so much as relates to the three small metal store-tanks, the demurrer to the return will be overruled, and a peremptory writ awarded to conform with the prayer of the petition as amended. RAY, J., absent; the other judges concur.