Bradbury, J.
The greater part of the several pleadings of fact in the case before us is devoted to detailing a history of the proceeding had before the county auditor and in the Court of Common Pleas of Allen county, to prevent or delay the action of that officer; most of which is immaterial to the questions at issue. Disregarding all this, the petition, nevertheless, shows that the relator is a resident citizen and taxpayer of the state of Ohio, and had been employed by the proper authorities of Allen county, of this state, to furnish facts and evidence to the auditor of the county sufficient to authorize that officer to place upon the tax duplicate of said county, property subject to taxation that had been improperly omitted therefrom ; that the defendant was the auditor of said county; that on August 10, 1888, the then county auditor of said county issued a notice to Calvin S. Brice that error had been discovered by relator in the tax returns of said Brice, in said county, and requiring him to appear on the 28th day of said month and show cause why the same should not be corrected; that said Brice did not appear pursuant to the notice, and the matter was continued without further action until September 3, 1889, at which date the defendant, who had become auditor of the county, issued at relator’s instance, a second notice, which recited the first one, fixing September 16,1889, for Brice to appear and show cause why his tax returns in said county should not be corrected, and stating that in default of his so doing the said auditor, from the facts and evidence furnished by the relator, would proceed to place against said Brice, on the tax duplicate of said county, the amounts found to have been omitted; that Brice did not appear on that day or on any other day to which the matter was, from time to time, continued; that on January 16, 1890, a day to which the matter had been con *168 tinuecl, Brice failing to appear, “ and the facts and evidence being before said defendant, as county auditor, of the holding by Brice, in each of said years from 1889 back to 1884, of personal property, investment in bonds, stocks, etc., subject to taxation in said county, and not returned by or for him for taxation, to the amount in some of said years, of more than $2,000,000, .not including penalties, the relator demanded that the true amount thereof, as nearly as it was practicable to ascertain, be entered by the defendant upon the tax list of said county against said Calvin S. Brice,” and that said defendant refused and still refuses to proceed or act in the matter.
The answer interposed by the defendant consists mainly of a recital of the various causes of delay, and exhibits quite as clearly as the petition itself, the obstacles and difficulties encountered by the relator, and his final failure to secure an examination of the evidence he had furnished to the defendant under his contract; but it sets forth no sufficient grounds for a refusal to proceed with the enquiry.
The reply consists, mainly, of either denials or explanations of the averments of the answer, but, as the answer does not contain facts sufficient to constitute a defense to the petition, the reply may be regarded as wholly immaterial.
To this reply the defendant interposed a general demurrer which he contends searches the record and brings in issue the sufficiency of the petition.
In the case before us the alternative writ was allowed by the three judges of the circuit court. On the day fixed by the court for the defendant to show cause why a peremptory writ should not issue he filed his answer; on the same day the relator filed a reply to this answer, and on the day following a demurrer to the reply was interposed.
The sections of the statute prescribing the procedure in mandamus are as follows:
“ Section 6748. On the return day of an alternative writ, or such further day as the court may allow, the defendant may answer as in a civil action; or, if the writ be allowed by a single judge, he may demur.”
*169 “ Section 6749. The plaintiff may demur to the answer, or reply to any new matter therein; and the defendant may demur to the reply as in a civil action.”
It will be observed that the order of pleading prescribed by the statute was strictly pursued by the parties in the circuit court.
Section 6751, Revised Statutes, provides that “the pleadings (in mandamus) shall have the same effect, and must be construed, and may be amended, as in civil actions.” A demurrer is a pleading (section 5059 Revised Statutes) and, by section 6751, is to have the same effect in mandamus as in civil actions. Its effect in civil actions is to search the record. Headington v. Neff,, 7 Ohio (pt. 1) 229; Trott v. Sarchett, 10 Ohio St. 241; Hillier v. Stewart, 26 Ohio St. 652; 1 Samuel, 119, n. 7. The demurrer to the reply in the case at bar must therefore be held to search the record and put in issue the sufficiency of the petition. Indeed it is difficult to see in any case, whether mandamus or other relief is sought, how the plaintiff can recover, or be granted relief, where his petition does not state facts showing his right to it. In such case the foundation on which the relief should be based is wanting, and none can be awarded, without violating the principles that underlie the whole system of pleading, as recognized in our jurisprudence.
The sufficiency of the petition is denied:
1. Because it does not disclose an interest in the relator sufficient to entitle him to the writ.
2. The defendant is restrained by injunction.
3. It does not state the nature of the facts submitted to the defendant, upon which he was required to act.
4. That the statute, 83 O. L. 82, under which the action of the defendant was invoked, is unconstitutional.
The construction and constitutionality of that statute, 83 Ohio Laws, 82, has been determined in the case of Byron Gager, Treasurer of Erie County, v. A. W. Prout and Perry G. Walker, ex'rs., etc., considered and decided contemporaneously with this case, and will not be discussed in this opinion.
*170 1. The interest of the relator.
The petition declares that the relator is a resident taxpayer of the state, and as such has an interest, in common with all other tax-payers, in having all property, subject to taxation, placed upon the tax duplicate; he also had a special interest arising out of his contract. This contract provides that 20 per cent of the amount he secures to the public is to be paid to him for his services in furnishing evidence to the auditor by which property improperly omitted is added to the tax duplicate. This contract is claimed to divert the public funds from their proper objects and is, therefore, illegal. This claim is not well founded; the contract violates no statute of the state; on the contrary it is a contract expressly authorized by an act of the legislature, (85 Ohio Laws, 170,) passed in 1888, “To secure fuller and better returns of property for taxation.....” Nor is it a diversion of the public funds, but is rather a mode of compensating services actually performed for the public, and, to quicken the energies of the servant, this compensation is made to depend on the efficiency of his services.
To hold that the constitution prohibits the legislature to authorize the officers of the state or county to employ persons to assist in adding to the tax duplicate, property unlawfully omitted therefrom, is entirely too narrow a construction of that instrument. The statute (85 Ohio Laws, 170,) must be regarded as part of the general plan by which the constitutional rule, that all property subject to taxation is to be equally taxed, may be enforced, and therefore all contracts made in accordance with its provisions legal and valid.
2. The effect of the Reichelderfer injunction is next to be considered. The relator in his petition set forth the proceedings in this action, by filing a copy of the petition and restraining order as an exhibit. • An examination of the petition in the action begun by Reichelderfer, shows that he sought to have the contract between the relator and the authorities of Allen county, (by which relator was to furnish evidence of property improperly omitted from the tax duplicate of the county), declared illegal and void, and the injuno *171 tion was to restrain proceedings under that contract until the final hearing of the case. This injunction did not purport to restrain the defendant from proceeding to discharge his duty of restoring to the tax duplicate property improperly omitted therefrom, and, therefore, constituted no excuse for his refusal to proceed on the evidence already furnished by relator; for that evidence was equally convincing, and it was as much the defendant’s duty to examine it, if it was furnished under an illegal contract, as if the contract was valid; his duty to act, resting upon the fact that he had before him information, in its nature requiring him to do so, rather than upon the manner in which it had come to his knowledge.
3. It is also claimed that the petition is defective in omitting to state facts necessary to show that Mr. Brice had made a false return. The proceedings before the auditor were to place, upon the tax duplicate of Allen county, “ any personal property, moneys, credits, investments in bonds, stocks or otherwise, owned by Calvin S. Brice, in any of said year or years, subject to taxation in said county,” and not returned for that purpose. The petition does not aver that Brice was a resident of that county, or even of the state of Ohio, nor does it give a statement of the evidence and facts submitted by the relator to the defendant, which it is claimed would establish the false returns.
It should be remembered in this connection, however, that the case before the court is not directly against Mr. Brice, nor is it to require the court to perform the duties of a county auditor; this court is not asked to examine the evidence laid before that officer, and, if found sufficient, to immediately adjudge that the omitted property be added to the duplicate; the case, on the contrary, is against the auditor, to compel him to perform a duty enjoined upon him by law, and the petition is sufficient in this respect if it shows him to be in default. His duties, in respect of property improperly omitted from the tax duplicate, are prescribed by sections 2781 and 2782, Revised Statutes. By these sections he is required to proceed to inquire into the matter “ if he shall have reason to believe, or be informed,” that false or incorrect returns *172 have been made by any person. These sections (2781 and 2782, Revised Statutes), impose an active duty upon a county auditor in this matter of omitted taxes. The policy of the law is that all property shall share equally the burden of taxation. The auditor of a county is its financial officer; his duties are not merely to sit and investigate cases of alleged omissions brought before him by others. Though clothed with quasi judicial powers in these matters, yet he is an administrative officer, too, and is required to act upon information, and it is immaterial how the information is received, whether by accident, by his own exertions, or is furnished by a tax inquisitor, employed by virtue of the statute (85 Ohio Laws, 170). The averment of the petition in this respect is as follows : “ facts and evidence being before said defendant, as county auditor, of the holdings by Brice, in each of said years, from 1889 back to 1884, of personal property, investments in bonds, stocks, etc., subject to taxation in said county, and not returned by or for him for taxation, to the amount, in some of said years, of more than $2,000,000, not including penalties, the relator demanded of said defendant that the time amounts thereof, as nearly as it was practicable to ascertain, be entered by defendant upon the tax lists of said county, against said Calvin S. Brice.”
This averment is indefinite respecting the nature of the evidence laid before the defendant to invoke his action, and is vague and unsatisfactory in other respects; no motion, however, was interposed to make the petition more definite and certain, and the controversy, therefore, is over its sufficiency as against a general demurrer. The averment is that the defendant had before him “ facts and evidence,” . . . . “ of the holding by Brice,” in each of the years named, of large amounts of property subject to taxation in Allen county, and not returned by him for that purpose. A fair construction of this language is that the defendant had facts and evidence before him showing that Brice had held in each of those years, property subject to taxation, which he had not returned for that purpose.
If this was so, it clearly follows, from the principles here *173 inbefore announced, respecting the duties of county auditors, in such cases, that the defendant should have proceeded in good faith to investigate the matter. No doubt the duty is one of delicacy, and calls for the exercise of a conservative judgment, and sound discretion. The great power vested in county auditors by the statute, is liable to cause hardship and oppression, if exercised recklessly or wantonly, but that affords no just ground for a refusal to act in a proper case. Nor should a county auditor decline to discharge this grave and important duty to the public, on the plea that it might cause individual annoyance ; this is the frequent result of a firm and impartial performance of public duties.
4. The earlier doctrine in mandamus was that the peremptory writ should strictly follow the alternative one; that rule in all its strictness is still followed in many of the more modem cases.
“ A peremptory mandamus cannot be limited, but must be in exact accordance with the writ upon which it is founded .....” Tapping on Mandamus, sec. 402. “ Before we can grant a peremptory mandamus, the prosecutor is bound to’ satisfy us that there is a legal duty imposed upon the defendant to comply with all that is commanded in the (alternative) writ.” Campbell, C. J., in Regina v. Railway Co., 16 A. & E. N. S. 30; Iowa, ex rel., Dox v. The County Judge of Johnson Co., et al., 12 Iowa, 237; 14 Am. & Eng. Ency. of Law, 214.
Valid reasons for this rigid rule are not at all apparent. The remedy by mandamus is to enforce civil rights, and why the proceedings therein should not be as elastic as in civil actions has not been satisfactorily answered by the cases that adhere to the rule. In civil actions no one would be heard to contend at this late day, that, because the plaintiff had claimed more than, upon the trial, he could maintain, it would be fatal to his right to recover that to which he was entitled upon the facts and the law as they appeared upon the trial.
In mandamus is it so much less difficult for a party to determine, in advance, the exact measure of his rights, that if *174 be makes a mistake in that regard, by claiming more than he can maintain upon the trial, he is to be sent out of court, mulct in costs, and compelled to begin de novo ? If he claims less than his right, no more than is claimed will be awarded him. If the rule should be maintained in all its strictness, the remedy of mandamus will be a perilous one to invoke in cases where more than a single act or right is sought to be enforced. If less than his full right is claimed by a party, he will not recover that not claimed, but must encounter the delay of another proceeding, and the hazard of a plea of res adjudicada, in respect of it; while, if he claims too much, he will be denied any relief whatever, however clearly his title may appear to a large part of his demand.
In many cases courts have sought to escape from the extreme severity of the rule; in some instances by holding the difference between the two writs to consist of immaterial matters of detail, while in others an amendment of the alternative writ was allowed, making it conform to the peremptory writ. State v. Board of Aldermen, 1 S. Car. 30; State v. Weld, 39 Minn. 426; State v. Baggott, 96 Mo. 63; Dillon on Municipal Corporations, sec. 879 (3d ed.)
Under the act of 1854 (S. & C. 1124 to 1128), this court held that the alternative writ could be amended. Johnes v. The Auditor of State, 4 Ohio St. 493; Fornoff et al. v. Nash, 23 Ohio St. 335.
As the act of 1854, (S. & C. 1126 sec. 571), then in force, commanded, in express terms, that the peremptory writ should follow the alternative writ, if the relief finally granted vaiied from that mentioned in the alternative writ, it was imperative that the alternative writ should be first amended, otherwise the peremptory writ could not follow it.
The act of 1854 not only provided (S. & C. 1127, sec. 571), that the peremptory writ should folloAv the alternative one, but also provided (S. & C. 1127, sec. 577), that “no other pleadings, or written allegation is allowed, than the writ and answer.” All this was changed by the revision in 1878. The provision of the act of 1854, supra, commanding the peremptory writ to follow the alternative one, was not *175 retained in the revision of 1878. Other changes were also introduced respecting the practice in proceedings in mandamus by the revised code. Sections 6748 and 6749, Revised Statutes, permits the same pleadings in mandamus as in civil actions; section 6751 provides that, “The pleadings shall have the same effect, and must be construed, and may be amended as in civil actions,” while section 6752 provides that “Issues of fact made by the pleadings must be tried, and the further proceedings thereon had, in the same manner as in civil actions.” These changes are significant. The pleadings, their construction and amendment, the mode of trial and other proceedings in mandamus, are all declared by statute to be “ the same ” * * * “ as in civil actions.” In view of these express provisions of the statute, it is difficult to see wherein a proceeding in mandamus differs in any material respect from a civil action, or even in any respect, except in name.
Treating the petition and the alternative writ based upon it, as the foundation of the relator’s claims, bearing the same relation to the proceedings in mandamus that the petition does to the proceedings in a civil action, and it is clear he is entitled to no relief beyond that which the petition and alternative writ show him entitled to, and if he wishes other relief he must, as in civil action, set forth by an amendment the facts that establish his right to it; but where, upon the trial, he is able to establish by proof, or maintain in law, his title to a part only of the relief sought, there seems, now, to be no reason for refusing to grant so much thereof as under the facts and law he is entitled to, without first amending the alternative writ. The alternative writ, it is true, has commanded him to do all the acts enumerated in it, or show cause for his refusal; but if he has only shown a legal excuse for not doing one of them, it would seem, in the nature of things, to be no defense for omitting to do the others, unless there is such dependence between them that all should stand or fall together.
This principle was recognized by this court in Ohio v. Board of Public Works, 36 Ohio St. 409, where the petition and the alternative writ founded on it was for the pay *176 ment of a sum of money and interest; but upon the final hearing this court denied the relator’s demand for interest, and granted a peremptory writ for the principal only. Ross v. Board of Education, 42 Ohio St. 379.
In the case at bar the alternative writ commanded the defendant to proceed upon the evidence placed before him by the- relator in the matter of the returns of Calvin S. Brice for taxation, for the five years running back from 1889, and restore any of his property found to have been omitted in any of said years, and charge the rate of taxes thereon provided by the statute. The statute (83 Ohio Law, 82) required him when he had restored the omitted property, to add fifty per centum to the amount thus restored, so that he was in effect commanded to add the fifty per centum, to the amount restored to the tax duplicate for each of the five years prior to the year 1889. The fifty per centum thus to be added being a penalty, was, so far as the statute (83 Ohio Law, 82) was retroactive, in violation of the constitution of the state, and has been declared so in the case of Byron Gager v. A. W. Prout et al., supra, decided at the present term of this court. According to the rule laid down in that case the command to the defendant should have been that he proceed to inquire into the matter for the five years running back from 1889, but that the penalty for the years 1884 and 1885 should not be added to the amount restored. A peremptory writ commanding that to be done, would only have differed from the alternative one in omitting to require the fifty per centum to be added in 1884 and 1885, to any amount that might have been restored to the duplicate under the writ for those years; this departure from the terms of. the alternative writ was permissible under the present statute regulating the practice in mandamus, and the peremptory writ should have been awarded accordingly. Writ awarded.