THE STATE EX REL. ALBERT I. BEACH ET AL., Constituting BOARD OF POLICE COMMISSIONERS OF KANSAS CITY, v. ALBERT I. BEACH, HENRY MCCUNE, ALFRED GOSSETT, GEORGE GOLDMAN, CHARLES CLARK, DAVID B. CHILDS, JASPER BELL, CLARENCE BURTON, IRA B. BURNS and HENRY F. MCELROY.—28 S. W. (2d) 105.

Court en Banc, May 15, 1930.

*Henry M. Beardsley, Martin J. O'Donnell* and *Frank Schibsby* for relators.

178

*John T. Barker, William H. Allen* and *Marcy K. Brown, Jr.,* for respondents.

GANTT, J.—Original proceeding in mandamus. Relators as the Board of Police Commissioners of Kansas City (herein designated Board), seek to compel the City Manager to submit to the City Council a new budget estimate for the fiscal year 1929-1930 containing the sum of $1,529,172 for the use of the Kansas City Police Department, and seek to compel the City Council (herein designated Council), upon submission of said budget to enact an ordinance appropriating said sum for said use.

The Board certified a budget estimate to the City Manager and Council totalling said amount. The City Manager and members of the Council asserted the power to question the reasonableness of the amount estimated, declared that in view of the needs of departments of the city the estimate was unreasonable, refused to make the appropriation, announced that $1,150,000 was more than sufficient and appropriated only said sum for said purpose. Hence this proceeding. All sections herein mentioned refer to Revised Statutes 1919.

We ruled in State ex rel. v. Jost, 265 Mo. 51, l. c. 83, 175 S. W. 591, that the City Manager and Council have no such power. But they here challenge certain items of the budget as not authorized by statute. Answering this the Board contends it is required to certify only the estimated total amount of money needed and for that reason the City Manager and Council were without power to question the items. We do not agree to this contention.

The word "estimate" as used in Section 8926 means an approximate calculation of the financial needs of the police department for the following fiscal year. Such calculation calls for a statement indicating the different purposes for which the money will be needed. From the beginning police commissioners have so construed the section, and we hold that the City Manager and Council are authorized to so challenge said items.

On the oral argument the learned City Counselor proclaimed the high character of the police commissioners, disclaimed an intention of charging them with actual fraud, but insisted that certain items of the estimate amounted to a legal fraud in that they were not authorized by law. Among the items questioned are the following: Superintendent of Bureau of Identification, Superintendent of Bureau of Records, Drill Master, Band Master, Photographer with the Bureau of Identification, Watchmen, Superintendent of Chauffeurs and Motor Equipment, Superintendent of Repairs, Shop Foreman, Garage Foreman, Machinists, Mechanics, Superintendent of

Print Shop, Printers, Investigator, Electrician, Carpenter, Plumber, Head Lineman, Linemen and Engineer.

The Board concedes that these items are not expressly mentioned in the statute, but insists they are authorized by Section 8946, which follows:

"The board of police commissioners shall provide itself with a secretary and assistant secretary and such clerks and other help as may be necessary for the transaction of its business, and shall have power to divide the city into police districts and furnish all the necessary materials and provisions for a perfect and complete organization and equipment of the police force and police department of the city, and may, under the direction and control of the board of public works, by and with the consent of the common council, evidence by ordinance appropriating money therefor, erect in any police district station house, jails and other accommodations for the use of the police department."

The City Manager and Council argue that the section only authorizes help at the office of the Board. If so, it adds nothing to the authority of the Board, for by Section 8935 (Laws 1921, p. 478) the Board is authorized to appoint a secretary and assistant secretary, and this is about all the help needed in said office. It does need help to provide "a perfect and complete organization and equipment of the police force and police department." We think such help is authorized by the direction to the Board to provide itself with "such clerks and other help as may be necessary for the transaction of its business." The business of the Board is set forth in Section 8919, which follows:

"The duties of the board of police hereby created shall be as follows: They shall at all times of the day and night, within the boundaries of the city . . . preserve the public peace; prevent crimes and arrest offenders; protect the rights of persons and property; guard the public health; preserve order at every public election and at all public meetings and places, and on all public occasions; prevent and remove nuisances . . .; provide proper police force at every fire for the protection of firemen and property; . . ."

Thus it appears its business covers the entire city and is directed from its office. By the employees of the department, its business is transacted at police and signal stations, property rooms, garages and carpenter, plumber, machine, print and repair shops of the department. To transact said business and to provide "a perfect and complete organization and equipment of the police force and police department," the employees above listed are needed. Clearly, the Board was authorized by said section to engage their services and fix their compensation.

Moreover, Section 8924 provides for the equipment of a permanent police force. Therefore, the provision in Section 8946 that the Board "shall have power to . . . furnish all the necessary materials and provisions for a perfect and complete organization and equipment of the police force and police department," must be held to authorize the equipment of such adjuncts to the permanent force as may be necessary to the organization of a complete police department. It must be conceded that a Bureau of Identification, Bureau of Records, Garages and Machine, Print, Carpenter, Plumbing and Repair Shops are necessary equipment. If so, the Board is authorized to provide such equipment, engage the services of persons in connection therewith and fix their compensation.

The City Manager and Council insist that authority to engage the services of said employees must be expressly given by statute. As supporting this contention they cite State ex rel. v. Jost, supra, l. c. 79, where we said: "This statute places a limit upon every act of the commissioners save and except the number of police districts and as to that nothing is said. In every other respect there is a limit beyond which the Board of Police Commissioners cannot go." In so stating we referred solely to Section 9787 (now Section 8935 in Laws of 1921, p. 478) which was then under consideration. That section provides only for a permanent police force. The section we are here considering provides for help and equipment necessary to complete the organization of the department. In this connection the City Manager and Council insist that the Board is without authority to create offices and fix salaries. The Board disclaims such authority and answers that it created no offices, but engaged the services of persons in connection with the equipment of the department. The positions challenged are not expressly provided by law, and the persons holding them are not required to give official bond and do not hold for a fixed term. Our Special Commissioner, to report the testimony with findings of fact and conclusions of law, found that the record disclosed no resolution of the Board creating offices and disclosed no other evidence tending to show an effort to create offices. For convenience, persons holding said positions are designated superintendents and foremen, but they are mere employees and can be dismissed at pleasure. [22 R. C. L. 381; State ex rel. v. Shannon, 133 Mo. 139, 164, 33 S. W. 1137.]

Other items challenged follow: Attorney and Assistant Attorney for the Board, Court Bailiff, 54 Chauffeurs and 17 Hostlers.

The Attorney and Assistant Attorney are authorized even under the Council's theory that the words "other help" must be limited to services rendered the Board at its office.

The Court Bailiff attends one of the city courts. He is not connected with the permanent force and is authorized under Sec-

tion 8946. The other city court is attended by an old policeman, who was assigned this duty under Section 8934.

The fifty-four chauffeurs exceed the limit by thirty-six. Section 8935 (Laws 1921, p. 478). It is shown that these men are uniformed patrolmen assigned to police duty on motor cycles or in automobiles and for that reason must be held to be patrolmen and not chauffeurs. No claim is made that the number of patrolmen, including the thirty-six using motor vehicles, exceed the number authorized by law. It is also shown that the men designated as hostlers perform no such duty. They are janitors and authorized in that number by Section 8935 (Laws 1921, p. 478).

The troubles of the Board growing out of the items of the estimate may be traced to a failure to follow the statute in making the estimate. On the face of the estimate the Council was justified in disallowing certain items. However, if the items are shown to be authorized by the facts, they should be allowed. The citizens of Kansas City and the State should not, merely on the face of the estimate, be denied the protection provided for them by law. We do not hold that Section 8926 is mandatory, but we note that an estimate made in compliance therewith will afford the Council an opportunity to pass on the legality of the items from the face of the estimate.

The City Manager and Council also challenge the item for 66 clerks. They admit the authority to employ the clerks, but charge it was wasteful for the Board to do so. The item being within the statute, the City Manager and Council are without authority to question it. [State ex rel. v. Jost, supra.]

At this point the City Manager and Council charge that the Board accepted the appropriation made by the Council and contend, for that reason, it is now estopped to maintain this suit. By paragraph fourteen of the return, they charge the Board with not accepting the appropriation. The Board is further charged with expending each month more than one-twelfth of the sum appropriated, and the City Manager and Council allege they informed the Board several times that they must keep within such appropriation. Thus it appears that the Board did not accept the appropriation, and respondents so understood. The contention is overruled.

Other items challenged follow: assistant drill master, $600; tailor, $1680; 2 assistant chiefs of police, $6,000; secretary to the chief of detectives, $2700; 2 captains, $6,000; 13 sergeants, $27,000; 10 detectives, $21,000; 2 assistant surgeons, $1800; totalling, $67,080.

After certifying the estimate to the Council, the Board dispensed with the services of the tailor and assistant drill master. The other items must be classified as part of the permanent force which is created by Section 8935 (Laws 1921, p. 478). The two assistant chiefs of police, two assistant surgeons and the secretary to the

chief of detectives are not authorized by said Section 8935, and the two captains, thirteen sergeants, and ten detectives are in excess of the number authorized by said Section 8935. These items are therefore disallowed. As stated, we held in the Jost case that Section 8935 (Laws 1921, p. 478) "places a limit upon every act of the commissioners save and except the number of police districts and as to that nothing is said. In every other respect there is a limit beyond which the Board of Police Commissioners cannot go."

In this situation the Board asks that our alternative writ be amended. This may be done. [Section 1290, Revised Statutes 1919; State ex rel. v. Baggott, 96 Mo. 63, l. c. 71, 8 S. W. 737.] It appearing that the certified estimate contains legal items in the sum of $1,462,092, our alternative writ is amended to conform to the proof in that respect. It follows that our writ as so amended should be made permanent and should issue against respondents and their successors in office. Let this be done. All concur, except *Walker, J.*, who dissents.

WALKER, J., (dissenting).—I do not concur in either the reasoning employed or the conclusions reached in the majority opinion.

The matters involved are, to my mind, of great importance, not only to the municipal autonomy of Kansas City generally, but more particularly to the management and expenditures of its finances. Thus imbued I cannot content myself with a "voiceless dissent," but feel impelled, in a proper discharge of my judicial duty, to fully and freely record my reasons for differing with my associates.

I. The limitations upon the power of the Board of Police Commissioners is a matter of first consideration. It is held in State ex rel. Reynolds v. Jost, 265 Mo. l. c. 79 that the statute Section 9787, Revised Statutes 1919 (now Sec. 8935, Laws 1921, p. 478), "places a limit upon every act of the Commissioners save and except the number of police districts and as to that nothing is said. In every other respect there is a limit beyond which the Board of Police Commissioners cannot go." It is ruled in the majority opinion that this limitation is restricted to the power granted in Section 8935, supra. A careful analysis of that statute discloses no grant of such power as is sought to be exercised by the Board in this case. It remains to be determined, therefore, whether other statutes, state or municipal, confer upon the Board the power sought to be exercised by it.

Section 8946, Revised Statutes 1919, is cited by the relators and has met with the approval of the majority opinion as sanctioning the demands of the Board. The relevant portions of that section are to this effect:

"The board of police commissioners shall provide itself with a secretary and assistant secretary and such clerks and other help as may be necessary for the transaction of its business, and shall have power to divide the city into police districts and furnish all the necessary materials and provisions for a perfect and complete organization and equipment of the police force and police department of the city."

The power of appointment conferred upon the Board by this section is clearly limited to providing officials to facilitate the discharge of its clerical and administrative duties and the keeping of its records and its power "to furnish all the necessary materials and provisions for a perfect and complete organization and equipment of the police force and the police department of the city." This can only be done after the Board has procured, in the manner required by law, a sufficient appropriation to defray the expenses of the exercise of the power contemplated by this section; but, as we will demonstrate, not in the manner sought to be accomplished by this proceeding.

Further, as was held by our Commissioner in his report upon the law and the facts, the section, while prospective in its operation, contemplated the exercise of the power therein granted upon the organization of the police department and not from year to year during its subsequent existence. Viewed from another vantage the power sought to be exercised in this proceeding, cannot, under the rules of construction, be held to be authorized by the language employed. It is plainly provided therein that the materials and provisions referred to in the section were not intended to increase the police force and provide supernumeraries not authorized by the plain letter of the law, but to effect "a perfect and complete organization of the department." "Organization" implies recent creation, not "amplification." To effect an organization, therefore, means to render operative whatever has been created. Little solace, therefore, as to the exercise of the powers of this Board, not specifically granted by law, can be obtained from this section.

II. In the further discussion of the absence of the power of the Board under this section (8935), we have incorporated herein the subject-matter of the reasoning of our Commissioner on this subject, which we not only deem is in harmony with the canons of construction but as well with a wholesome interpretation of the object and purpose of the applicable law. If the contention of the relators, as to the extent of the power granted by this section is correct, when followed to its logical conclusion, it must be construed as freeing the Board, a purely statutory body, from the limitations of the section and conferring upon it an unlimited grant of power to increase the

police force at its will and to compel the City Council to provide for the payment of the salaries of the increased force in such an amount as the Board may prescribe.

The fallacy of this interpretation of the law becomes apparent in the face of the fact, to which we have adverted, that the Board is purely a statutory body. Whatever vitality it possesses was derived from that source and whatever power, under an elementary rule of construction, it possesses must be prescribed in unmistakable terms in the law of the Board's creation, whether that law be state or municipal. There is no room in this statute for the exercise of implied power. The express power of the Board having been derived wholly from a legislative grant only such power beyond that grant can be exercised as is clearly comprehended within its express terms. [State ex inf. Harvey v. Mo. Ath. Club et al., 261 Mo. 576, 598, 170 S. W. 904.]

III. In harmony with the foregoing it follows that when the Legislature defined the personnel of the police department in Section 8935, it prescribed what positions should exist in that department and beyond that the relators may not go, except in the case of an emergency, which is not shown to exist. [State ex rel. v. Mason, 153 Mo. l. c. 48, 49.] The Police Board is an administrative body. [State ex rel. Heimburger v. Wells, 210 Mo. 601.] It has no legislative power as such. It can only exercise its prerogatives within the strict letter of the law.

Under Section 8946 no doubt can exist as to the power of the Board to appoint a secretary and assistant secretary. These places are named in the law. "Such clerks and other help" can mean only such employees as distinguished from policemen and police officers, as may be necessary for the transaction of the Board's business, other than the duties of a police character imposed upon the Board by Section 8919, which deals with Police duties exclusively. The Legislature in enacting this section realized that in providing for the statutory needs of a force of several hundred men, a large amount of work of a purely clerical and business nature entirely disassociated from police work would be entailed. A compilation of service records, payrolls, the keeping of records of board meetings, inventories of equipment and other details of a like nature are illustrations of this character of work. It would be a matter of impossibility for this work to be done only by a secretary, and so the Legislature provided for the necessary clerical employees to assist in the performance of this particular work.

The foregoing discusses and favorably disposes of the issues raised by the objections of respondents to the inclusion in the personal list of relators' budget estimate of positions not mentioned in Section 8935. It therefore appears that Section 8946, supra,

in authorizing the Board to provide "such clerks and other help as may be necessary for the transaction of its business," does not delegate authority to relators to create any police positions or fix salaries therefor, and has no application to the police positions named in relators' estimate, but only makes provision for clerical and business employees for the transaction of the Board's own business.

Other contentions of the relators concerning this estimate remain to be considered. The main point urged by respondents involves the reasonableness of relators' demand, both as to the personnel of the force and the amount asked for material, equipment and supplies. In the view heretofore taken on the illegality of many items of the demand of the Board a consideration of the reasonableness thereof need not enter. Such parts thereof as are illegal cannot stand in the face of the statute providing otherwise. Relators allege that their entire demand is reasonable, fair and correct; but they have failed to furnish proof of the correctness of this allegation. The statutes under which the Board operates set the standard of reasonableness; and only to positions in the police department specifically provided for by the statute can they be held to be reasonable. Police positions, as distinguished from mere employees, not mentioned in the statute, cannot be legally created by the Board.

IV. Either Section 8946 empowers the Board to make appointments outside of the statute or it does not. Our Commissioner held that it only authorized appointments within the office of the Board for the transaction of its routine business as distinguished from the power conferred upon it in regard to the police force, which is provided for in Section 8935 (Laws 1921, p. 478). We concur in that conclusion. The majority opinion, however, holds that under Section 8946 the Board may, outside of the statute, appoint a superintendent of the bureau of identification; a superintendent of the bureau of records; a superintendent of chauffeurs and motor equipment; a superintendent of repairs; a printer, carpenter, etc.; but under the same section the Board may not, outside of the statute, appoint an assistant drill master, a tailor, two assistant chiefs of police, a secretary to the chief of detectives, two assistant surgeons, etc. It is difficult to understand under what rule of interpretation Section 8946 can be construed to authorize the appointment to be made of one class of appointees for the police department and to deny it to others when neither have been given legislative recognition. The majority opinion holds that a superintendent of the bureau of identification may be appointed under Section 8946; that power is granted in Section 8955 to cities of 500,000 inhabitants, and the official is designated as a Superintendent of the Bertillon System. No

such power is conferred upon the Kansas City board. The fact that cities of 400,000 may appoint such a superintendent and that the law applicable to Kansas City is silent in that regard, authorizes the conclusion that the Legislature intended St. Louis to possess that power, but did not grant it to Kansas City. The majority opinion holds that the police commissioners may appoint a printer, but that they cannot appoint a tailor. Whether this judicial preference of the printer over the tailor was due to the fact that the former is said to represent "the art preservative of all arts" while the latter, as "some foolish knave, I think, 'twas, first began, the slander that nine tailors make a man," I wot not. But *facetiae* aside. Both are outside of the statute and the inclusion of either as within the power of the Board is unauthorized. The majority opinion likewise holds that the Board may appoint a superintendent of chauffeurs, but may not appoint a secretary to the chief of detectives. We are in the clouds as to the reason for this distinction. Either Section 8946 authorizes and empowers the Board to make such appointments outside of the letter of the statute as they deem necessary, or it confers no authority upon them, except as ·clearly defined.

V. Respondents set out in their brief a table taken from the record showing the cost of the Kansas City Police Department as compared with other cities of similar populations where testimony was taken by the Commissioner. The correctness of this table is not questioned by the relators and we set it out as showing the relative cost of police departments in such cities:

TABLE SHOWING COST OF KANSAS CITY POLICE DEPARTMENT AS COMPARED WITH OTHER CITIES.

| City | Population | Total Income | Demand | Police Cost Population Basis | Police Cost Income Basis |
|---|---|---|---|---|---|
| Kansas City | 391,000 | $6,500,000 | $1,529,172 | $3.91 | 23.53% |
| Minneapolis | 455,000 | 10,500,000 | 1,222,033 | 2.69 | 11.63% |
| St. Paul | 315,000 | 6,700,000 | 700,175 | 2.24 | 10.51% |
| Indianapolis | 382,000 | 11,288,000 | 1,267,000 | 3.26 | 18.34% |
| Cincinnati | 413,000 | 11,288,000 | 1,301,000 | 3.15 | 11.53% |

The following table, taken from the evidence, shows the total revenues, demands on same for the support of the Police Departments and other comparative data concerning the departments in these cities and Kansas City.

| | Kansas City | Minneapolis | St. Paul | Indianapolis | Cincinnati |
|---|---|---|---|---|---|
| Population | 391,000 | 455,000 | 315,000 | 382,000 | 413,000 |
| Area Sq. Mi. | 59 | 59 | 55 | 54 | 73 |
| Total Revenue | $6,500,000 | $10,500,000 | $6,700,000 | $6,800,000 | $11,288,000 |
| Police Appropria- tion Demand | | | | | |
| Salaries | $1,234,950 | $1,127,400 | $644,500 | $1,182,000 | $1,195,000 |
| All other expenses | 294,222 | 94,500 | 60,000 | 65,000 | 106,000 |
| Total Personnel | 752 | 542 | 343 | 568 | 677 |
| Uniform | 483 | 388 | 273 | 415 | 518 |
| Captains | 12 | 12 | 5 | 7 | 3 |
| Lieutenants | 2 | 17 | 5 | 13 | 32 |
| Sergeants | 43 | 21 | 10 | 32 | 38 |
| Detectives | 48 | 56 | 42 | 55 | 60 |
| Clerks | 66 | 14 | — | 9 | 18 |
| Miscellaneous positions, | 98 | 38 | 8 | 37 | 38 |
| Automobiles | 62 | 32 | — | 44 | 44 |
| Motor-cycles | 50 | 14 | — | 22 | 40 |

VI. From these tables it appears that Kansas City is expending more for its police department than the other cities named and that the Kansas City police force is larger than either of the other cities. In 1914, as shown in the Jost case, the population of Kansas City was 275,000. The demand at that time for the support of the police department was $640,000, or $2.36 per capita. In 1929, according to the record in this case the population of Kansas City was 400,000. The demand made by the Board was $1,529,172, or $3.82 per capita. The expenses of the police department have increased 135.23%, while the population has increased only 45.45%.

V,II. The creation of offices and the fixing of salaries is purely a legislative function, which cannot be delegated. In American Fire Alarm Co. v. Board of Police Commissioners, 285 Mo. 581, this court held that the members of the police board of Kansas City did not constitute a body politic and that they had not been clothed with corporate powers by the Legislature, but that they were simply three individuals possessing the power granted by the statute and nothing more. They, therefore, do not constitute a body or a board having legislative functions. This court has recently held that only the Legislature can create offices and fix salaries. [State ex rel. Rosenthal v. Smiley et al., 304 Mo. l. c. 557. See also State v. Butler, 105 Me. 91, 18 Ann. Cases, 489, note; Mer. Ex. v. Knott et al., 212 Mo. 616.] The Legislature has not attempted expressly or impliedly to delegate to the Board the power to create offices or positions outside of the plain letter of the law, and had it attempted to do so, it would have been contrary to the settled law of Missouri.

As to these appointments outside of the statutes, no appointee could maintain a suit for salary, and such being the case the Board

cannot maintain it for him. [Sanderson v. Pike County, 195 Mo. l. c. 605; State ex rel. v. Patterson, 152 Mo. App. l. c. 268; Holman v. City of Macon, 155 Mo. App. l. c. 402; State ex rel. v. Wofford, 116 Mo. l. c. 223; Bullis v. Chicago, 85 N. E. l. c. 615; Moon v. Champaign, 73 N. E. l. c. 408; State ex rel. v. Canavan, 30 Pac. 1079; People ex rel. v. Ham, 60 N. E. 191.]

VIII.   The demand presented to the city council was an illegal one.   The majority opinion so holds by striking out from the relators' demand nearly $70,000 of illegal items.   Mandamus will never lie to compel the performance of either an illegal or unauthorized act.   The majority opinion holds that the city may question the legality of demands of the Board.   It did so and ascertained that it was beyond the power of the Board to ask for 54 chauffeurs when the law allowed them only 16; or 17 hostlers when hostlers are not named in the statutes; and that such demands included other positions not authorized by law.   At the trial two members of the Board, other than the Mayor, testified that when they demanded money to pay chauffeurs they really wanted it to pay patrolmen, and when they demanded money to pay hostlers they really wanted it to pay janitors.   The majority opinion holds that this testimony made the illegal demand previously presented to the council legal, although the council was not informed and could not be expected by any process of divination to know, that chauffeurs meant patrolmen and that hostlers meant janitors.   That this was an afterthought on the part of the Board and an attempt to give a color of legality to an illegal demand is obvious, because the demand was for 17 hostlers at a salary of $1,080 per annum, when Section 8935 (Laws 1921, p. 478) authorizes the appointment of janitors ''at a salary of $1200 per annum.''   As the Board demanded hostlers at a salary of $1080 per annum it could not have meant janitors because they were required to be paid the statutory salary of $1200 per annum.   The Board undoubtedly knew, or must be charged with the knowledge, that only statutory salaries can be paid to officials and that janitors could not be paid less salaries than the statute provides.   [MacMath v. United States, 248 U. S. 151; Glavey v. United States, 182 U. S. 595; People ex rel. v. Board of Police, 75 N. Y. 38; 22 R. C. L. p. 538.]

IX.   As to the testimony of the members of the Board that when they demanded 54 chauffeurs they meant patrolmen, it appears that they had already demanded 429 patrolmen, which in their judgment was all they needed.   The testimony does not show how many of these men were to be chauffeurs and how many were to be patrolmen.   Obviously, they did not intend to use these chauffeurs,

for patrolmen because they made provision in their demand for a salary of $1500 per annum for each of these patrolmen, which would place them in Class C, where they could only serve "for a period of six months." [Sec. 8935, Laws 1921, p. 479.] There is no testimony that they were appointed for six months and the money to pay them was requested on a yearly basis.

X. Our commissioner correctly held that mandamus was not available to compel the Council to appropriate money to pay the salaries of illegally appointed officers or employees. [State ex rel. v. Stone, 269 Mo. l. c. 342; State ex rel. v. ▮▮▮▮▮▮ Adcock, 225 Mo. l. c. 363; State ex rel. v. Hudson, 226 Mo. l. c. 263; State ex rel. v. Highway Comm., 312 Mo. l. c. 242; Johnson v. Board, 168 N. W. l. c. 422; Shisler v. Philadelphia, 46 L. R. A. (N. S.) l. c. 726.]

Although the demand as presented to the Council was illegal, the oral explanation of the members of the Board, conflicting as it did with the demand, was sufficient, according to the majority opinion, to justify an amendment of the alternative writ so that only legal items were allowed. This was improper. Mandamus cannot create new rights nor confer new powers. All it can do is to bring existing powers into operation by issuing its peremptory writ. The court, therefore, in its majority opinion has found against the respondents on illegal demands. [State ex rel. v. Hudson, 226 Mo. l. c. 263; State ex rel. v. Dickey, 219 S. W. l. c. 366; State ex rel. v. Thompson, 293 S. W. 391; United States v. County of Macon, 99 U. S. l. c. 591; Nelson v. District, 196 Pac. l. c. 295.]

XI. Another reason why the peremptory writ of mandamus should not have been issued is that it will be wholly ineffectual and unavailing. This was not a suit for a definite sum of money, but to ▮▮ ▮▮▮ compel the council to repeal an apportionment ordinance passed April 29, 1929, and to pass a new ordinance dealing solely with the revenues of 1929. The fiscal year began April 30, 1929, and ends April 30, 1930. After the end of the fiscal year there will be no money available for the City Council to apportion and, as this court recently said in State ex rel. Spec. Rd. Dist. v. Holman, 305 Mo. 195, there will be no funds that the peremptory writ can reach, and it should have been denied.

In that opinion it was further held that: "The fact that there are no funds the peremptory writ could reach if issued, makes it necessary to refuse that writ. Even though it be assumed that the disbursement of the fund was not authorized, the rule still would apply. It is the fact that there are no funds the writ could act upon which requires the conclusion reached."

So we have the situation here of the Legislature definitely and specifically creating and fixing the number and degrees of police positions in Kansas City, and despite this fact the majority opinion holds that without a specific grant of legislative power, relators have absolute authority to determine what officers shall be necessary in addition to those created by the applicable law (Sec. 8935), which, under well defined rules of statutory construction, should exclude all others, and that in addition the relators have power to create the offices in question and fix the salaries therefor.

Finally in summarizing our reasoning and conclusions, with that courtesy which should always characterize a difference of opinions, we cannot reconcile the majority opinion with the facts and the law in this case.

Especially is this true of the opinion in holding that any police position created by relators in excess of the number authorized by Section 8935 would be legal. In addition, the evidence shows that many of the positions which the majority opinion legalizes as appointments under the enlarged powers read into Section 8946 are purely police positions, the incumbents performing purely police functions. The most striking examples of this are the following: the Superintendent of the Bureau of Identification, who is simply a police officer carrying the title and star of a lieutenant, performing strictly police duties and paid a salary in excess of the statutory compensation of a lieutenant; also the Superintendent of the Bureau of Records, which is purely a police position, the duties of which are technical police work, and likewise the Court Bailiff, who is a uniformed police officer, performing police duties. The same is true of the watchmen, the police signal operators, the booking and desk clerks and the Bertillon room photographer.

From all of which it follows that the peremptory writ should have been denied.