SAMUEL ENSWORTH, Plaintiff in Error, *v.* WILLIAM M. ALBIN *et al.,* Defendants in Error.

1. *Elections — Section 18 of act of 1868, touching registration, constitutional.* — Section 18 of the act touching registration of voters (Sess. Acts 1868, p. 136) is not in conflict with the State constitution in any of the following particulars:

. 1. Its subject-matter is sufficiently pointed out and expressed in the title of the act, under section 32, article IV, of the constitution.

Ensworth v. Albin et al.

2. Its requirement of a supplemental registration to meet the exigency of a special election, is not at variance with the uniformity of registration required by section 4, article II, of the constitution.

3. It is not in conflict with said section 4, article II, as making such special registration evidence of the right to vote.

4. It is not unconstitutional on the ground that the neglect of duty on the part of the board of registration might practically work a disfranchisement of voters registered at the regular biennial registration.

5. It is not in conflict with section 4, article II, because it allows said board up to five, instead of ten days before the election within which to complete the books of registration, unless the "completion of the books" be held to authorize a continued registration of votes down to within five days of the election, and unless it appear that persons cast their votes within the ten days. Even if the act expressly authorized the continuance of the registration to within five days, that would not vitiate the whole enactment, but only that particular part of it.

2. *Mandamus, demurrer to treated as answer — Waiver.* — In proceedings in *mandamus,* where respondent filed a demurrer to the petition instead of an answer to the writ, and relator agreed to accept the demurrer as a return to the writ, and demurred to it accordingly, his agreement and subsequent action constituted a substantial waiver of his objections to the technical correctness of the pleadings.

## *Error to Fifth District Court.*

*Ensworth,* for plaintiff in error.

Points of counsel are sufficiently set out in the opinion of court.

*Everett, Reed & Pike,* for defendants in error, cited State *ex rel.* Ensworth v. Albin, 44 Mo. 346; City of St. Louis v. Teifel, 42 Mo. 578; State v. Mathews, 44 Mo. 523; State *ex rel.* Weir v. County Judge, 2 Iowa, 280; 37 Mo. 330; 2 Conn. 490; 38 Mo. 209; 25 Mo. 125; 21 Penn. 147; 15 Iowa, 305; 4 Dale, 14; 41 Mo. 224–30.

CURRIER, Judge, delivered the opinion of the court.

This is a proceeding by writ of *mandamus* to compel the County Court judges of Buchanan county to issue to the relator a commission as judge of the Common Pleas Court of that county, and is, as respects its subject-matter and the parties, identical with a former suit by the State, upon the relation of Ensworth, against the same respondents, reported in 44 Mo. 346. It was

held in that proceeding that the special election, under which the relator claims, was unauthorized and invalid, and that the relator consequently acquired no rights under or in virtue of such election.    Upon that ground the peremptory writ was denied.    The election was held invalid for the reason that it was not preceded by the special registration contemplated in section 18 of the act of March 21, 1868, in relation to the registration of voters. (Sess. Acts 1868, p. 136, § 18.)    It is not now claimed that there was any such special registration, but it is insisted — a point not made before — that the statute requiring the registration is unconstitutional and void.    The act referred to is now assailed as unconstitutional in various particulars and upon various grounds :

1.  As in conflict with the provisions of article IV, section 32, of the constitution.    It is urged that the act contains subjects of legislation which are not expressed in the title.    That objection has no application to the eighteenth section.    The subject of that section is sufficiently pointed out and expressed in the title, and does not, therefore, fall within the scope of the objection, since the constitution expressly provides on that subject that an " act shall be void only as to so much thereof as is not so expressed."

2.  The special registration provided for in section 18 is supposed to break up the uniformity of registration required by article II, section 4, of the constitution.    The uniformity of registration there required has reference to equal and uniform laws regulating registration, which, under like circumstances and conditions, shall have equal and uniform effect in all parts of the State.    There is nothing in section 18 of the act of 1868 inconsistent with a uniformity of that character; that is, the requirement of a supplemental registration to meet the exigency of a special election is not at variance with the uniformity required by the constitution.    The constitution makes it the duty of the Legislature to provide by law for the registration of all persons who are, by its provisions, qualified to be registered as legal voters.    It further requires that " a new registration shall be held once in every two years, and within sixty days next preceding the tenth day prior to every biennial general election."    So much

the constitution demands, but it nowhere prohibits intermediate registrations "for the purpose of keeping the list of qualified voters complete" for use at special elections. It would be a reproach to that instrument if it contained a prohibition so entirely unreasonable. If the constitution contained no provision on the subject of registration, the Legislature would nevertheless be at liberty and have the power to enact the registration system. It has the same power now as to all matters not prohibited or provided for in the constitution; and there is no prohibition or provision covering the subject of completing the list of voters preliminary to special elections. (See Sharpless *et al.* v. The Mayor of Philadelphia, 21 Penn. 147; Morrison v. Springer, 15 Iowa, 304.)

3. It is again objected that the registration act makes that "evidence of a person's right to vote, which the constitution expressly inhibits."

The constitution (art. II, § 4) provides that after a registration has once been made, such "registration shall be evidence of the qualification of all registered voters to vote at any election thereafter held," and that the "fact of such registration shall be in no otherwise shown than by the register or an authentic copy thereof." It was to secure to persons entitled to registration, but who were not registered prior to the last preceding general election, this constitutional evidence of their qualification as voters, that the Legislature, in section 18 of the registration act, provided for a special registration preliminary to special elections. This was proceeding under the constitution and in harmony with it, and not in opposition to its requirements. At the same time it secures to the citizen his right of voting at special elections by placing within his reach the prescribed evidence of his qualifications as a voter.

4. It being held, under the act of 1868, that a special or supplemental registration is a necessary preliminary condition to the validity of a special election, it is urged that neglect of duty on the part of the board of registration might involve the practical disfranchisement of voters who were registered at the regular biennial registration; that is, that the legal voters of the county

or district might be deprived, in the case supposed, of an opportunity to cast their suffrages for the officers to be voted for at the special election. We are referred to no case where a law has been held unconstitutional for the reason that the officers appointed to execute it had neglected their duty or abused their trust; nor are we aware of any principle on which to base such a decision.

5. The relator's fifth position is that section 18 of the registration act "makes voters by registration, where the constitution prohibits it." The constitution (art. II, § 4) provides that "no person shall vote unless his name shall have been registered at least ten days before the day of election." Section 18 of the act in question provides that the board of registration "shall complete the books of registration five days prior to said special election." It is thence inferred that the act assumes to "make voters" down to within five days of the election, in conflict with the constitutional provision which limits the time to ten days. There is no force in this view, unless by "completion of the books" it is intended to authorize the continued registration of votes down to within five days of the election; and it is very questionable at least whether that was the purpose of the Legislature. But if the act expressly authorized the registration to be continued to within five days of the election, that would not vitiate the whole enactment, but only that particular part of it. If the clause in relation to the completion of the books were entirely out of the section, the relator's case would not be thereby strengthened. The point, in fact, has no relevancy to any of the issues in the case. There is no claim that improper parties voted at the election, or that any one was registered in opposition to the requirements of the constitution.

6. The same answer may be made to the relator's sixth proposition, which asserts that so much of the ninth section of the act as authorizes the board of registration to act upon its "own knowledge" in passing upon the qualifications of parties applying for registration, is unconstitutional and void. Suppose that were so, how does the fact bear upon the present inquiry? The case presents no issue as to the action of the board in receiving

or rejecting applicants for registration. The main point of inquiry is, had the Legislature authority to order a special registration preparatory to a special election? That inquiry has already been answered in the affirmative.

Some question is made as to the technical correctness of the respondents' pleadings. Instead of an answer to the alternative writ, the respondents, in the first instance, demurred to the relator's petition. The relator, however, as the record shows, subsequently agreed to accept the demurrer in an amended form, as a return to the writ. He treated the pleading as an answer, and demurred to it accordingly. The relator's agreement and subsequent action constituted a substantial waiver of his objections.

The judgment will be affirmed. The other judges concur.