THE STATE *ex rel.* CAMERON v. SHANNON.

Division Two, March 3, 1896.

1. **Municipal Officer**: KANSAS CITY SUPERINTENDENT OF WATERWORKS: MANDAMUS. The superintendent of waterworks of Kansas City, who is to hold office for one year, and to give bond for the faithful performance of his duties, is an officer of the city, though he is paid as city employees generally, and may be removed at the pleasure of the board of public works; and he may, therefore, bring *mandamus* to compel the approval of his bond.

2. ——: ——: ——: COLLATERAL ATTACK. The appointment of such superintendent can not be collaterally attacked in *mandamus* proceeding, on the ground that the mayor did not approve the same.

3. ———: ———: ———: APPROVAL OF BOND. It was no excuse for
the city comptroller's failure to approve the bond of the superintend-
ent of the waterworks that it was a rule of the comptroller's office,
adopted without authority, that the form of the bond should be
approved by the city counselor.

## *Mandamus.*

PEREMPTORY WRIT AWARDED.

*Karnes, Holmes & Krauthoff* and *Frank H. Dexter*
for relator.

(1) A peremptory writ of *mandamus* should issue
upon the facts presented, disregarding the contest
sought to be raised by respondent concerning relator's
right and title to the office of superintendent of water-
works. It is well settled by the general doctrine
relating to the writ of *mandamus*, and by a consistent
line of decisions of this court, that in this proceeding a
contest for an office will not be determined. *State ex
rel. v. Taaffa*, 25 Mo. App. 570; *State ex rel. v. Auditor*,
36 Mo. 72; *State ex rel. v. May*, 106 Mo. 488. (2) It
was held in *State ex rel. v. Vail*, 48 Mo. 215, that
where a commission had been issued that it invested
the incumbent with the title and was *prima facie* evi-
dence of his right to the office. (3) While the right
to an office can not be determined in a proceeding of
*mandamus* to compel the payment of salary to a person
claiming such office, or to compel the performance of
official duty alleged to be obligatory by reason of the
official character of such officer, the courts may compel
recognition of the claimant who has the better *prima
facie* right until by contesting the election, or by pro-
ceeding in *quo warranto*, the rights of the party are
finally determined. *State ex rel. v. Johns*, 81 Mo. 17;
McQuillin on Pleading and Practice, sec. 1673, page
365, note 101. (4) On application for *mandamus* to

obtain possession of a public office, the court will not go behind the certificate of election and try the actual title to the office. *State v. Johnson*, 16 So. Rep. (Florida) 786.   (5) The official duty of respondent, in so far as acting upon the bond in question is concerned, is simply to satisfy himself as to whether or not the sureties thereon are good and sufficient, and if they are found to be so, to approve the bond.   His duty and authority are solely and alone to this one function limited.   An officer charged with a duty by law of approving the bond of officers is not permitted to pass on the qualifications of applicants for the office. *People v. Perry*, 13 Barb. 206; *Mobile v. Cleveland*, 76 Ala. 321; *State ex rel. v. Churchill*, 41 Mo. 41; *State ex rel. v. Lafayette County Court*, 41 Mo. 221; *State ex rel. v. County Court*, 41 Mo. 247; *State ex rel. v. County Court*, 41 Mo. 545.   (6) The appointment of relator made by the board of public works was duly and regularly made by the mayor and was not affected by the attempted revocation subsequently sought to be made by the mayor. *Marbury v. Madison*, 1 Cranch, 137; *State ex rel. v. Barbour*, 53 Conn. 81; *Ex parte Reno*, 66 Mo. 266; *People v. Fitzsimmons*, 68 N. Y. 514; *Thomas v. Burns*, 57 Am. Dec. 154.   (7) The charter and ordinances require the appointment of superintendent of waterworks by "a majority of the members of the upper house" and not a majority of the upper house.

*C. O. Tichenor*, also, for relator.

*H. C. McDougal, C. S. Palmer*, and *F. F. Rozzelle* for respondent.

(1) *First.* Under the express terms of the ordinance under which he was appointed, relator is not an

officer but a mere employee. *Second.* He can perform only such duties as may be required by the board of public works; is "under the supervision and direction" of said board; is to be paid "as other city employees," and may at any time be removed at the mere pleasure of that board. Secs. 8 and 9, Ordinance. (2) These provisions of ordinance fix his status as an employee subject to removal at pleasure, and in such cases the writ of *mandamus* will not lie. *R. v. Covertry,* 2 Salk. 430; *Sandys, Ex parte,* 4 B. & Ad. 863; *Evans v. Heart of Oak B. Soc.,* 12 Jur. (N. S.) 163; *Q. v. Raines,* 3 Salk. 233. (3) The mayor revoked and withdrew his consent to the appointment within the hour that it was given. No rights had accrued to anyone, nor had any other officer or body or person acted upon his approval, nor was the appointment then complete. At that period the mayor had the right to revoke and withdraw his consent. In all cases holding the contrary it will be found upon examination that some other officer or body or person had acted upon the act of the officer making or approving the appointment, or that the act in question was the last step in and completed the appointment. *Marbury v. Madison,* 1 Cranch, 137; *Conger v. Gilmer,* 32 Cal. 76; 19 Am. and Eng. Encyclopedia of Law, 426. Even after confirmation by senate, president or governor may withhold commission. Throop on Pub. Off., sec. 87, *et seq.* (4) The appointment of a superintendent of the water-works was not among the cause or causes for which the council was convened at the special session in question. The charter expressly provides that at such special meetings the business to be transacted by the council "shall be confined to such cause or causes" as shall be stated in the mayor's message. Hence, it was not within the power of the council to either consider

or act upon this appointment. Sec. 12, art. 4, charter, and other sections; *City of St. Louis v. Withaus*, 90 Mo. 646; 15 Am. and Eng. Encyclopedia of Law, 1028, 1029, and cases cited. (5) The relator does not have a clear right either to the remedy which he seeks nor yet to the office or position claimed. Hence, *mandamus* should be refused. *State ex rel. v. Albin*, 44 Mo. 346; *State ex rel. v. Newman*, 91 Mo. 445; *State ex rel. v. Williams*, 99 Mo. 291; *Spencer County Court v. Harcourt*, 4 B. Mon. 499. (6) Where there is any discretionary power given an officer, *mandamus* will not lie to compel him to act in a particular way. Cases last cited, and *Dalton v. State*, 44 Ohio St. 652; *State v. Shaw*, 43 Ohio St. 324; *People v. Knickerbocker*, 114 Ill. 539; *Dechert v. Com.*, 113 Pa. 229; *Swan v. Gray*, 44 Miss. 397; Mechem, Pub. Offices, sec. 657; *Arapahoe County v. Crotty*, 9 Colo. 318; High, Extr. Rem., sec. 49, and cases cited.

BURGESS, J.—This is an original proceeding by *mandamus* to compel the comptroller of Kansas City to approve the bond of relator, who claims to have been duly appointed to the office of superintendent of waterworks of said city in pursuance of its charter and ordinances, and by and with the consent of its mayor.

The petition avers, that the relator, William L. Cameron, "is now a resident of Kansas City, Jackson county, Missouri, where he has lived for several years last past, and that John F. Shannon, respondent herein, is the duly appointed and qualified comptroller of said city, and that said Kansas City is a municipal corporation, duly created and organized under and by virtue of the provisions of section 16, article 9, of the constitution of Missouri, and by virtue of the charter

adopted by the qualified voters of said city, at a special election held April 8, 1889.''

By the provisions of section 1, article 1, and section 1, article 3, and by the terms of article 13 of said charter, the said city is authorized to operate and maintain a system of waterworks in said city, and by the provisions of said article 13, the board of public works has the control and management of said waterworks, and said board has power to appoint, with the consent of the mayor and the majority of the members of the upper house of the common council, such chief superintendent, and subordinates as may be necessary for the management and efficient operation of said works, and as may be provided by ordinance.

Said city is now, and has been for a long time, in possession of, owning, and operating a system of waterworks.

There was duly enacted by the said common council of said city, and duly approved by the mayor, on the twenty-seventh day of April, A. D. 1894, ordinance number 5801, entitled, ''An ordinance relating to the management and control of waterworks.'' Sections 8 and 9 of said ordinances read as follows:

'' Section 8. There is hereby established a department of the board of public works to be called the department of waterworks. The head of this department shall be the superintendent of waterworks, who shall be appointed by the board of public works, with the consent of the mayor and a majority of the members of the upper house of the common council. The superintendent, first appointed under this ordinance, shall hold his *office* for one year, and thereafter the superintendent shall be appointed for a term of two years. He may be removed at any time by a vote of three fourths of the members of said board, and in case of a vacancy for any cause, his successor shall be

appointed as above provided. Said superintendent shall, before entering on the duties of his position, give bond to the city for the faithful performance of his duties as such superintendent in the sum of ten thousand dollars, with at least two good and sufficient sureties, to be approved by the city comptroller. He shall receive as full pay for his service the sum of three thousand dollars per annum, payable monthly, in the same manner as other city employees.

" Section 9. The superintendent of waterworks shall have under his special charge the pumping machinery, conduits, reservoir, water pipes, and the operation of the same. The placing and repairing and maintenance of meters, valves, fire plugs, and all other property and appurtenances of the water supply and distribution. He shall superintend the enlargement and extension of waterworks, superintend and direct the laying of pipes, making shut-offs, and tapping of mains, and shall perform all duties in relation thereto that may be required of said board, and he shall be under the supervision and direction of said board."

On the fourth day of November, 1895, the said board of public works, duly assembled, passed and declared the following resolution, as appears by the minutes and record kept and preserved by the secretary of said board:

"The board met in special session at 9 o'clock A. M.; members present, President Tiernan, Gage, Owen, and Slavens. The board went into executive session. On arising from executive session it was announced by the president that the board had unanimously adopted the following resolution:

"*Be it resolved* by the board of public works of Kansas City, Missouri, That W. L. Cameron be and he is hereby appointed superintendent of the waterworks for the term of one year, subject to the approval

of the mayor and the upper house of the common council, pursuant to ordinance 5801.

"PETER H. TIERNAN, President.

"L. C. SLAVENS, Member.
"JOHN C. GAGE, Member.
"R. S. OWEN, Member."

On the same day a copy of said foregoing resolution passed and declared by the board of public works, November 4, appointing William L. Cameron superintendent of the waterworks, and duly attested by the secretary of said board, was by him delivered to Webster Davis, mayor of said Kansas City, for his approval. Thereupon, and on said day, the said Webster Davis, mayor of said city, duly approved the appointment of said W. L. Cameron, made by the board of public works, by marking his approval on the certified copy of said resolution, so delivered to him; which said approval appears thereon, by the following indorsement: "Approved November 4, Webster Davis, Mayor."

Thereupon the said Webster Davis, mayor of said city, delivered the said appointment of W. L. Cameron, with his approval indorsed thereon, or caused the same to be delivered, to Peter H. Tiernan, the duly elected president of the upper house of the common council and *ex officio* president of the said board of public works.

Thereafter said appointment was consented to by a majority of the members of the upper house of the common council of said city in the following manner, to wit:

On November 22, 1895, at a special meeting of the upper house of the said common council, upon motion of Peter H. Tiernan, president and member thereof, the said appointment of W. L. Cameron was confirmed

by six members of the said upper house voting in favor thereof, said six members being Peter H. Tiernan, L. E. Wyne, W. W. Morgan, Frank Philips, Frank J. Shinnick and George Eyssell; said upper house of said common council consisting of ten members and said six members being a majority thereof, due record of said proceedings having been made by the said clerk of said city; and on November 23, 1895, the said six members of the upper house of the common council constituting a majority of the members thereof, as aforesaid executed and delivered to Peter H. Tiernan, *ex officio* president of said board of public works, the following writing, consenting to and confirming said appointment of said W. L. Cameron:

"The undersigned, constituting a majority of the members of the upper house of the common council of Kansas City, Missouri, do hereby consent to and approve of the appointment of W. L. Cameron as superintendent of waterworks by the board of public works of said city, we having already signified our consent to and approval of said appointment at the special meeting of the common council, held on the twenty-second day of November, 1895, in the executive session of said upper house then held.

"Witness our hands this twenty-third day of November, 1895.

(Signed)
"Peter H. Tiernan,
"L. E. Wyne,
"W. W. Morgan,
"Frank Philips,
"Frank J. Shinnick,
"Geo. Eyssell."

The proceedings had at and during the said meeting of the upper house of the common council, and of the members there present, on the evening of Novem-

ber 22, were adopted and approved by the members of the said upper house of the common council at the meeting duly held on the evening of November 26, 1895. Upon the record and minutes of said meeting appears the following entry made by the city clerk: "The council met in special session pursuant to the call of the mayor, the proclamation having been published according to law. All members present except Huttig and Johnson, and the minutes of the last meeting were approved."

On the fourth day of December, 1895, the said board of public works of said city, at a meeting duly assembled, passed and declared the following resolution, as appears by the record and minutes of said meeting made and kept by the secretary of said board, to wit: "Be it resolved, that the proper certificate of his appointment as superintendent of waterworks be issued to W. L. Cameron, and that he be notified to qualify and take possession of the office."

Immediately after said meeting, the said board of public works, through its president, Peter H. Tiernan, executed and delivered to said W. L. Cameron, a certificate of his appointment to the said office of superintendent of waterworks in the nature of a commission, which said certificate is as follows:

"STATE OF MISSOURI, ⎱
    "Kansas City.    ⎰

"This is to certify that on the fourth day of November, 1895, the board of public works, of Kansas City, Missouri, duly appointed W. L. Cameron as superintendent in the department of waterworks of said city, as provided by ordinance number 5801, approved April 27, 1894, which appointment was on the same day duly approved by the mayor, and, on the twenty-second day of November, 1895, by a majority of the

members of the upper house of the common council of said city:

"*In witness whereof*, I have hereunto set my hand and caused the seal of said board of public works to be affixed this fourth day of December, 1895.

"Peter H. Tiernan, President,

"Attest:            H. P. Langworthy, Secretary."

Immediately thereafter, and upon the same day, the said William L. Cameron took his oath of office as prescribed by section 28, article 4, of the charter of said city, which said oath was taken before Frank H. Dexter, a notary public duly appointed and qualified in and for Jackson county, Missouri, and is as follows:

"State of Missouri,⎫
                   ⎬ ss.    Oath of Office.
"County of Jackson,⎭

"W. L. Cameron, being duly sworn, upon his oath states: I do solemnly swear that I will faithfully and honestly discharge the duties of the office of superintendent of waterworks of Kansas City so long as I shall continue in such office, according to the laws of the State of Missouri, and the charter and ordinances of Kansas City; that I will faithfully support the charter and ordinances of Kansas City, and support the constitution of the United States and of the state of Missouri, and to faithfully demean myself in said office. So help me God.

(Signed)            "William L. Cameron.

"Subscribed and sworn to before me this fourth day of December, 1895.

"Frank H. Dexter.

"(L. S.)   Notary Public, Jackson county, Missouri."

Said oath of office was written upon and was a part of the said certificate of appointment so delivered by the board of public works to said Cameron.

On January 6, 1896, relator applied to and receiv-

ed from the office of said John F. Shannon, comptroller of said city, one of the blank bonds long in use for the bonds of officers of said city, and caused the same to be duly filled out and executed by himself as principal and Thomas Reilly and H. M. Meriwether, as sureties, in the sum of ten thousand ($10,000) dollars, all as required by said ordinance, number 5801, heretofore referred to, which said bond is in words and figures following, to wit:

"OFFICER'S BOND.

"Know all men by these presents, that we, William L. Cameron, as principal, and Thomas Reilly and H. M. Meriwether, as his sureties, are firmly held and bound unto Kansas City in the sum of ten thousand dollars, for the payment of which, well and truly to be made, we do hereby bind ourselves, our heirs, executors, and administrators, firmly by these presents.

"This obligation is upon the following conditions, to wit: That whereas, on the fourth day of November, A. D. 1895, W. L. Cameron was appointed by the board of public works, superintendent of waterworks of said city, to hold office for one year unless sooner removed according to law; and, whereas, the mayor of said city did duly consent thereto in writing on the said date; and whereas, a majority of the members of the upper house of the common council of said city did afterward duly consent thereto; and whereas on the fourth day of December, 1895, the board of public works by its president, under its official seal, and attested by its secretary, did issue a certificate of appointment to the said W. L. Cameron, in the nature of a commission, in pursuance of a resolution of said board of public works:

"Now, if the said W. L. Cameron, as aforesaid,

shall faithfully discharge and perform all of his duties, as superintendent of waterworks, of Kansas City, then this obligation to be void, otherwise to remain in full force and effect.

"The printed words 'of said city for the term of one year, unless sooner removed according to law,' erased before execution.

"*In witness whereof,* We have hereunto subscribed our names and affixed our seals on this sixth day of January, A. D. 1896.

> "WM. L. CAMERON.    [SEAL]
> "THOMAS REILLY.    [SEAL]
> "H. M. MERIWETHER.    [SEAL]

"The form of the above and foregoing bond is hereby approved.

> "————————— City Counselor.

"The above and foregoing bond is hereby approved this —— day of ———, A. D. 18——.

> "——————, City Comptroller."

And on said sixth day of January, 1896, relator submitted said bond to the said John F. Shannon, city comptroller, aforesaid, for the purpose of obtaining his approval thereof.

The sureties upon said bond are men of good standing, residents of Kansas City, Missouri, solvent and responsible and are each worth property unincumbered greatly in excess of $10,000, the amount of said bond.

Said Shannon, city comptroller, refused to accept the said bond, although said sureties were solvent and sufficient for the amount of said bond.

Relator presented and delivered to the city clerk of Kansas City the certificate of appointment heretofore referred to and described, together with the oath of office thereon, on the fourth day of December, 1895.

The petition also alleges that:

"Your petitioner states that there is no other claimant to said office, and that he has a just and legal right to the same, and that he has no other adequate or effectual legal remedy to secure his rights herein. Your petitioner further represents that by the wrongful and unreasonable refusal of said Shannon, as said city comptroller, to approve the said bond and sureties thereon, your petitioner is prevented from entering upon the duties of said position, as superintendent of waterworks of said city, said ordinance 5801 expressly providing, as above set forth, that said superintendent shall, before entering upon the duties of such position, give bond to the city for the faithful performance of his duties as such superintendent in the sum of $10,000, with at least two good and sufficient sureties to be approved by the city comptroller; and your petitioner is thereby prevented from enjoying the salary and emoluments of said office, to his great loss and damage. That he has done all that is required of him by the charter and ordinances of said city to perfect his title to said office.

"Wherefore, your petitioner prays that an alternative writ of *mandamus* be issued to said John F. Shannon, commanding him, as such city comptroller, to immediately, upon the receipt thereof, approve and accept said bond and sureties, if the said sureties are good and sufficient, or show cause why he has not done so."

The foregoing petition was duly sworn to by petitioner and filed in the office of the clerk of this court, January 8, 1896.

Respondent made return to said petition as follows:

"Comes now the above named respondent, John F. Shannon, as city comptroller of Kansas City, pursuant to stipulation heretofore filed, and in obedience to the order of the court of date January 8, 1896, and for

his answer to the petition herein, standing as, and for, an alternative writ of *mandamus*, says:

"That said relator ought not to have his peremptory writ of *mandamus* herein, for respondent says he denies that he wrongfully or without reason refused to accept and approve said bond of the relator, and denies that said relator had or has a just or legal or any right or title to said position of superintendent of the waterworks of said Kansas City, and said respondent says that he declined and refused to accept and approve said bond of the relator last presented to him in the due exercise of his official discretion in the premises, for the causes and reasons hereinafter set forth, and none other, that is to say:

"I

"*First.* That when said bond of the relator as superintendent of waterworks of said Kansas City was first presented to this respondent for his approval, respondent examined the same and thereupon saw that the same had been signed by said relator and his said sureties, but that the form of said bond had not been approved by the city counselor as had been the invariable custom of his office, and respondent did not feel that he was either authorized to or that he would be justified in approving said bond, and especially was this true as he then knew the city counselor had declined to approve the form thereof.

"*Second.* This respondent further says:

"That under the terms of the charter and ordinances of said city, a superintendent of waterworks could only be appointed by the board of public works, with the consent of the mayor and a majority of the members of the upper house of the common council, and that when said bond was so presented to respondent he believed from the facts set forth in the petition and in this return that said provision of the charter,

respecting the consent of the mayor, had not been complied with, and that it then was and still is the judgment and opinion of this respondent that such an appointment, without such consent of the mayor, would be and that the same was invalid, and that for the foregoing reasons respondent did not believe, and does not now believe, either that said appointment was legal, or that said bond was the legal and valid obligation of the parties whose names were signed thereto, and for these reasons declined to accept and approve the same.

"And respondent further says that for a long series of years, during which he was a clerk in the office of comptroller, and later, for a period of nearly four years during which he was comptroller of said city, it has been the invariable rule and custom of his said office to decline to approve any and all bonds presented to him for approval, until the form and legality of such bonds had been passed upon by the city counselor, and until his indorsement to that effect and his approval of the form thereof first appeared upon said bond. That because the city counselor had not only not approved, but had declined to approve the form of said bond, and because this respondent believed said bond was not binding upon the sureties thereto, for the reasons aforesaid he declined, as he believed and still believes he had a right to do, to approve the same.

"*Third.* Respondent says: That no copy of either of the several orders or certificates of the board of public works of said city, as copied in the petition standing as the alternative writ, were ever presented to him except the alleged certificate of appointment; that he had no knowledge or information as to whether or not the certificate of appointment of relator, issued by the president and secretary of said board of public works, was in fact so issued or delivered to relator or

not, nor had he any knowledge or information as to whether the so-called oath of office copied in the alternative writ herein, was indorsed upon the back thereof as stated in said alternative writ, nor were the same recorded in the clerk's office. But this respondent says that there is not, either in the charter or in any ordinance of said city of Kansas City, any provision which either requires or authorizes said board of public works to issue a commission or certificate of appointment to the superintendent of waterworks, or to any other appointee of that board, or to any one else; nor is there any provision in either the charter or in the ordinances of the city, which requires the superintendent of waterworks to take an oath of office. And respondent says that for these reasons the issuance of the said so-called certificate of appointment as well as the so-called oath of office indorsed thereon, were and are merely voluntary acts of no binding force or effect, and were and are null and void.

"II.

"This respondent further says: That said peremptory writ of *mandamus* should not issue herein, for the further reason that under the provisions of the charter of said city, and of the parts of ordinances copied in said petition, the superintendent of waterworks was not and is not, nor can he be an officer in any sense; but respondent avers that said superintendent of waterworks was and is, under said charter and ordinances, a mere employee, and that the term of service of such superintendent may at any time be terminated by said board of public works at the mere pleasure of said board, for that by the terms of section 8 of ordinance number 5801, copied in said petition, it is expressly provided that said superintendent of waterworks 'may be removed at any time by a vote of three fourths of the members of said board' and that it is

and must be apparent upon a consideration of the charter and ordinances of said city, that said superintendent occupies a mere position of employment 'under the supervision and direction of said board' and that by the express terms of the said ordinance authorizing his employment he is to be paid 'in the same way as other city employees.'

"III.

"And for further return to said writ, this respondent says that the peremptory writ of *mandamus* should not issue herein, for the further reason that said W. L. Cameron was not and is not the legally appointed superintendent of waterworks of said Kansas City; but that the attempt upon the part of the board of public works and upon that of the upper house of the common council to appoint him to said position, were and are illegal, null, and void, for the reasons following, that is to say:

"That while it is true that said board of public works, as stated in said alternative writ, did on November 4, 1895, make an order appointing said Cameron as superintendent of waterworks; and while it is true that on the same day the mayor of said city did indorse upon a copy of said order the words, 'approved, November 4, 1895, Webster Davis, mayor,' yet, this respondent says that later, and on that same day, to wit, on said November 4, 1895, and within the hour of said approval, and before any action had been taken by the upper house of the common council upon said appointment, and before any rights were or could have accrued to or been vested in said relator by virtue of said appointment, the mayor of said city revoked and withdrew his consent to and his approval of said appointment, in and by a written communication which said mayor on that day wrote and delivered in person to

Peter H. Tiernan, the then president of the upper
house of the common council and the then *ex officio*
president of said board of public works, which said
communication was and is in words and figures follow-
ing—that is to say:

" 'MAYOR'S OFFICE.

" 'KANSAS CITY, Mo., Nov. 4, 1895.
" '*To the Honorable Upper House, of the Common Coun-
cil:*

" 'GENTLEMEN:—As I gave my written consent to
the appointment of Mr. W. L. Cameron as superin-
tendent of the waterworks under a misapprehension, I
hereby withdraw and revoke such consent. Please
take notice of the revocation and withdrawal of my
consent to such appointment.

" 'Very respectfully,
" 'WEBSTER DAVIS, Mayor.'

"That on the night of said November 4, 1895, and
after said consent and approval of said mayor to said
appointment had been so withdrawn, the common
council of said city met at its regular monthly session
but that no mention was then made by the president
of said upper house or by anyone else, in open session
or otherwise, either of the appointment of said Cam-
eron as such superintendent, or the approval of said
appointment, or of the withdrawal of the mayor's con-
sent thereto. That thereafter, and at a special session
of the common council of said city, duly held on No-
vember 8, 1895, said president of the upper house
thereof produced and caused to be read to said upper
house, in open session, said written communication of
the mayor of date November 4, 1895, withdrawing and
revoking his consent to such appointment. That
between said meeting of the common council of No-
vember 8, 1895, and said special meeting of November

22, 1895, there were two other special meetings of the common council of said city, and that at neither of said special meetings was any action taken upon such appointment or the approval thereof, or the mayor's withdrawal and revocation of his consent to said appointment.

"That on November 22, 1895, there was another special session of the common council, and that among the proceedings of said last mentioned meeting there appears to have been an executive session of said upper house, after which appears the following record entry: 'W. L. Cameron, superintendent of waterworks, confirmed.' Respondent says that said record does not contain any other entry in any way tending to show that said appointment was confirmed by a vote of a majority of the members of said upper house; but he avers that if it did so show, yet that said confirmation and consent to said appointment was and is illegal and void, for the reason that the mayor, upon the very day he approved said appointment, and before said appointment was finally consummated, and before any rights had vested by virtue thereof or the said upper house had taken any action thereon, had withdrawn and revoked his consent to and approval of said appointment in said written revocation and withdrawal of his consent hereinbefore copied, and which had been read to and in the hearing of said upper house at its called session on November 8, 1895, and of which said upper house and the members thereof, and said board of public works and said relator, all had full knowledge and notice; and this respondent says that the mayor, at the time of doing so, had the right so to revoke and withdraw his said consent to said appointment, and that it was then and there the duty of said upper house to act as if he had never consented to said appointment, and that because said upper house then acted as if said

consent had not been revoked when they knew that it had been revoked as above set forth, their action in attempting to confirm said appointment was null and void, and said relator was not legally appointed to said position.

"IV.

"And for further return to said writ this respondent says, that a peremptory writ of *mandamus* should not issue herein for the further reason that said Cameron was not and is not lawfully appointed superintendent of waterworks of said city, for the additional reason that the action of the upper house of the common council at its meeting of November 22, 1895, respecting its confirmation of and consent to said appointment was and is illegal and void for the additional reasons following, that is to say:

"That said meeting of the common council was a special session thereof; that as to the business which may lawfully be transacted at such special meetings of the common council of said city, the city charter provides as follows (article IV, section 12): 'Whenever a special session of the common council shall have been called by the mayor, he shall state to each house, in writing, when assembled, the cause or causes for which they have been convened, and their action shall be confined to such cause or causes.' And this respondent says, that while the president of the upper house of the common council of said city, just prior to the said special meeting of that body, on November 22, 1895, had without the knowledge or consent of the mayor, caused to be inserted in the mayor's message stating the cause and causes for which the common council had been convened, the following words: 'Mayor's appointment of superintendent of waterworks;' yet that said mayor, upon the discovery of said interpolation in his said message, struck out from

said message, before signing or sending the same to
either house of the common council, the words above
inserted into his said message, so that the confirmation
of a superintendent of waterworks was not among the
mayor's statements in writing of the cause or causes
for which the council had then been convened; and as
the charter of said city expressly provides that the
action of the common council at such special meetings
'shall be confined to the cause or causes' for which
they have been convened, as the same are stated in the
mayor's message in writing, and that as action upon
the nomination of a superintendent of waterworks
was not among the cause or causes by the mayor so
named, the matter of consenting to or confirming or
approving said appointment was not at that special
meeting lawfully before said upper house for its con-
sideration, nor was it then within the power of said
upper house to take any lawful action whatever
thereon; and this respondent says, that for these rea-
sons and for the further reason that the mayor, on
November 4, had withdrawn and revoked his consent
to said appointment by the writing aforesaid, as said
upper house at the time well knew from having the
mayor's written withdrawal and revocation read to and
in their hearing at said special meeting on November
8, as hereinbefore stated, the action of said upper
house of the common council in its attempt to consent
to and confirm said appointment was and is null and
void; and respondent says, although it is true, as
stated in said alternative writ, that six members of said
upper house of the common council thereafter, and on
November 23, 1895, did sign a paper writing consent-
ing to and approving said appointment, and stating
that said six members had already signified their con-
sent to and approval of said appointment at such spe-
cial meeting of November 22, 1895, in executive session,

then that said written consent was and is of no force or effect whatever, because said six members were seen and acted separately on the streets and elsewhere, and did not act in or as a body but as individuals, and respondent says that consent of said upper house could not be lawfully given in that manner or form for the reason that section 34 of article 4 of the charter of said city provides that 'when the consent of the upper house of the common council is required by this charter to the appointment of any officer by the mayor, or any other officer or officers of the city, such consent can only be given by a majority of the upper house of the common council elect voting for such appointment,' and respondent says that the obvious intent and meaning of the requirement of such consent of the upper house, or a majority of the members thereof, was and is declaratory of the general rule of law that said members of the upper house should act as a body or unit, and not as individual members of said upper house; and that their lawful action is and must be confined to such action as may properly be taken at either regular meetings, fixed by law, or at special meetings duly called, and as and in a body.

''Respondent further says that although it is true, as stated in said petition, that the minutes of said special meeting of November 22, 1895, were approved at a subsequent special session held on November 26, yet that the said meeting of November 26 was also a special session, and the approval of the minutes of a subsequent meeting and the confirmation or consent to the appointment of a superintendent of waterworks were not among the cause or causes for which the common council had been convened as stated in the mayor's message, and that the upper house had no lawful right to, nor could it, at such subsequent meeting, by the

mere formal entry of approving the minutes of a former meeting, galvanize into legal life or give any force or effect whatever to a void act at any previous meeting.

"And this respondent further says, that at and for a number of days prior to the issuance of its so-called certificate of appointment or commission to said relator, the board of public works, and each and every member thereof, and said upper house and the relator, each had full notice and actual knowledge of the facts hereinbefore set forth as to the withdrawal and revocation of the mayor's consent to said appointment of the relator, and of the fact that action upon the confirmation of such superintendent was not among the cause or causes specified in his message and for which the mayor had called the said special session of November 22, 1895.

"And respondent further says, that before said bond was presented to him, he had read and studied the written opinion of H. C. McDougal, the city counselor, given to the mayor, holding that the confirmation of said Cameron was null and void for the reasons hereinbefore last given; and that had there been no other objection to the validity of said bond, as hereinbefore mentioned, he would have been inclined to refuse to approve said bond because in the judgment of respondent under the facts hereinbefore stated and under the provisions of charter and ordinances as hereinbefore and in said writ set out, he was of the opinion that the appointment of said Cameron was null and void, and that he had no legal right, nor was it his official duty to approve the bond of one who simply claimed to be but was not properly or legally appointed.

"Wherefore, respondent prays judgment that said petition and writ be dismissed, and that a peremptory writ of *mandamus* be denied herein."

Thereupon relator duly filed in this court his

demurrer to said return, which said demurrer is in words and figures as follows, omitting the caption and title:

"Now comes the relator and demurs to the answer and return of the respondent herein, for the reason that said answer and return does not state facts sufficient to constitute a defense to the petition standing as and for an alternative writ of *mandamus* herein."

I.   Respondent's first contention is that, as the superintendent of waterworks of Kansas City can perform only such duties as may be required by the board of public works, under whose supervision he is, is paid as provided by ordinance as other city employees, and may at any time be removed at the pleasure of said board, he is not an officer under the charter and ordinances of said city, and that the writ of *mandamus* will not lie.

While it may be conceded in this case if waterworks commissioner is a place of mere service, that the writ will not lie (*Ex parte Sandys*, 4 Barn. & Ad. 863), it does not necessarily follow that because the commissioner is paid as other city employees, and may be removed at the pleasure of the board of public works, that he is not an officer within the meaning of the charter and ordinances of the city.

By section 8, ordinance number 5801, there is established a department of the board of public works to be called the waterworks, whose head is made superintendent of waterworks, the term of office of the first appointee being fixed at one year, and other appointees thereafter at two years.   The salary is fixed at $3,000 per annum, payable monthly, and before entering on the duties of his position he is required to give bond to the city, for the faithful performance of his duties as such superintendent, in the sum of $10,000, with at

least two good and sufficient sureties, to be approved by the city comptroller.

In *People ex rel. v. Langdon*, 40 Mich. 673, it is said: "An office is a special trust or charge created by competent authority. If not merely honorary, certain duties will be connected with it, the performance of which will be the consideration for its being conferred upon a particular individual, who for the time will be the officer. The officer is distinguished from the employee in the greater importance, dignity, and independence of his position; in being required to take an official oath, and perhaps to give an official bond; in the liability to be called to account as a public offender for misfeasance or nonfeasance in office, and usually, though not necessarily, in the tenure of his position." That case was followed and approved in *State ex rel. v. May*, 106 Mo. 488, and again in the more recent case of *State ex rel. v. Johnson*, 123 Mo. 43.

The fact that it is provided by ordinance that the superintendent of waterworks shall hold his *office for one year*, give bond for the faithful performance of his duties, clearly shows that he is an officer, and because he may be removed at the pleasure of the board, and that he is paid as other city employees, does not show to the contrary, as such things are not inconsistent with his position as such officer.

II.  For another ground of objection to making the writ peremptory it is insisted that as relator's appointment was conditional on the consent of the mayor, although such consent was given, yet the mayor had the right to withdraw the same, before any right by reason thereof accrued to any person or was acted upon by any other person, or officer of said city, upon whose approval the appointment became complete and that as such assent was withdrawn within the hour that

it was given by a written communication signed by the mayor, addressed to the upper house of common council, and duly received by that body before any action was taken with regard thereto, the appointment never became complete and only under such conditions is he entitled to a peremptory writ.

But we are of the opinion that the right of relator to the office can not be inquired into in this proceeding. No authority or power is conferred on the comptroller of the city to pass upon or decide the validity of relator's claim to the office. His duty with respect to the approval of the bond of the superintendent of waterworks, is purely ministerial. The final act to complete the appointment was its approval by the board of public works, of said city. This appears from the certificate of the president of the board of public works, attested by its seal and its secretary, to have been done on the fourth day of December, 1895, in which it is recited, "that on the fourth day of November, 1895, the board of public works of Kansas City, duly appointed W. L. Cameron as superintendent in the department of waterworks of said city, as provided by ordinance number 5801, approved April 27, 1894, which appointment was on the same day approved by the mayor, and on the twenty-second day of November, 1895, by a majority of the members of the upper house of the common council of said city." This certificate was evidence of relator's appointment which was consummated by the action of the board of public works, when it approved it, and whether the proceedings in connection therewith were regular or not, as this is not a contest over an office, that question can not be inquired into.

When relator's appointment was approved by the board of public works, it became the duty of the comptroller to approve his bond when tendered to him for

that purpose unless some valid legal objection existed to the bond itself. It was not for him to decide upon the legality of relator's appointment, or whether he was in fact entitled to hold the office. Upon that question we do not undertake to pass, as it is not involved in this proceeding.

*Beck v. Jackson*, 43 Mo. 117, was a proceeding by *mandamus* to compel the respondent judge of the circuit court of that circuit which included the county of Cape Girardeau to approve the bonds of the relator as clerk of the circuit court and recorder of that county, to which positions he had been appointed and commissioned by the governor. And it was held, that the commission issued by the governor was at least *prima facie* evidence of title to the office, and a peremptory *mandamus* would issue to compel the judge of the court to approve the bonds; and that the validity or legality of the commission could only be determined by a proceeding in the nature of a *quo warranto*. A similar ruling was made in *State ex rel. v. Wear*, 37 Mo. App. 325.

The approval of the board of public works of the appointment of relator to the office of superintendent in the department of the waterworks of said city of which the certificate of said board of public works was at least *prima facie* evidence of title to the office, conferred upon him the right to have his bond as such approved by the comptroller. Now, if the board of public works had refused to approve relator's appointment, or to certify thereto after it had made the same, and to which the mayor and upper house of common council had assented, and this proceeding were against said board to compel it to approve the appointment or certify thereto, then the legality of the appointment might have been questioned by the board, as it was the final arbiter with respect thereto.

In *People ex rel. v. Canal Appraisers*, 73 N. Y. 443, it is said: "When the act, the doing of which is sought to be compelled by *mandamus*, is the final thing, and if done gives to the relator all that he seeks proximately or ultimately, then the question whether he is entitled to have that act done, may be inquired into by the officer or person to whom the *mandamus* is sought, and is also to be considered by the tribunal which is moved to grant the *mandamus*, but where the act to be done is but a step towards the final result, and is but the means of setting in motion a tribunal which is to decide upon the right to the final relief claimed, then the inferior officer or tribunal may not inquire whether there exists the right to that final relief, and can only ask whether the relator shows a right to have the act done which is sought from him or it."

Under such circumstances to entitle the relator to the writ it devolves upon him to show a clear legal right to the remedy he seeks. *State ex rel. v. Albin*, 44 Mo. 346; *State ex rel. v. Williams*, 99 Mo. 291; *State ex rel. v. Newman*, 91 Mo. 445; *Justices v. Harcourt*, 4 B. Mon. 499. And this includes legal qualifications to fill the office.

III. Another reason assigned by respondent for his failure and refusal to approve the official bond of relator is, that the form of said bond had not been approved by the city counselor as has been the invariable custom of his office, but that said counselor had refused to approve the same. It is not claimed that the bond is insufficient in amount or that the sureties are not worth the amount of the penalty of the bond, above all liabilities and exemptions or that it is not in legal form. Nor is it contended that the city charter or ordinances make the approval of the form of the bond by the city counselor prerequisite to its approval by the comptroller. Such a rule is but an arbitrary one,

and has no binding force or effect.  As was said in *State ex rel. v. Bates*, 17 S. E. Rep. 28:  "No doubt such a rule is one of convenience, but all rules adopted by a public officer for the guidance of the affairs of his office, in order to be binding on the public, must be based upon some authority in the law.  If no power is confided by the law in such officer to establish such rule, or if the law itself does not prescribe such rule, the officer, when he is required to perform some duty of his office, can not invoke such rule to protect him in the failure to discharge his duty."

The bond seems to be in proper form and the sureties entirely responsible for the amount of its penalty, and as no sufficient reason is shown by the return why respondent should not perform an act purely ministerial, and which he alone is clothed with power to perform, the demurrer must be sustained, and peremptory writ awarded.

The conclusion reached renders it unnecessary to pass upon other questions argued by counsel, both in briefs and in oral argument.  GANTT, P. J., and SHERWOOD, J., concur.