## EX PARTE C. W. ROBINSON.

*No. 3551.    Decided November 8.*

1.    **Inspection of Oils—Interpretation of the Codes.**—The Act of April 5, 1889, provides for the inspection of refined oils which are the product of petroleum, and which may be used for illuminating purposes within this State, and to regulate the sale and use thereof, and to provide penalties for violations of the same.    The proviso embodied in the third section of the said act provides that it "shall not be necessary to inspect *one* which has been inspected under the law of another State."    From the subject matter of the act and the context of the proviso it is manifest that the word "one" was erroneously incorporated in the proviso in the stead of the word "oil," and that the intent and purpose of the Legislature in the enactment of the proviso was to exempt from inspection in this State oils which had been previously inspected under the laws of another State.

2.    **Same.**—Section 5 of the said Act of April 5, 1889 (for which see the opinion), applies only to fluids which have been brought into this State without any previous

inspection. It does not apply where there has been a legal inspection in the State from which it was shipped.

• HABEAS CORPUS on original application to the Court of Appeals from Harris County.

The opinion discloses the case.   • .

*E. P. Turner,* for relator.

*W. L. Davidson,* Assistant Attorney-General, and *C. C. Leverett,* for the State.

WHITE, PRESIDING JUDGE.—A complaint was filed against the relator Robinson in the Justice Court of Precinct No. 1 of Harris County, charging him with a violation of law by selling one barrel of illuminating oil, the product of petroleum, without having had the same inspected and branded in conformity with the provisions of the Act of April 5, 1889. Genl. Laws, 21 Leg., p. 122, *et seq.* He was arrested under a writ issued by the justice of the peace upon said complaint, and being held in custody by virtue of said arrest and commitment thereunder, he has sued out an original writ of *habeas corpus* from this court upon the ground that his arrest is illegal, and that he has been guilty of no violation of law.

An agreed statement of facts is submitted, from which it substantially appears that Robinson purchased a railroad tank of oil at Findlay, in the State of Ohio, which said tank, before it was shipped, was inspected, branded, and stamped according to the provisions of the laws of the State of Ohio in such cases made and provided, by a duly appointed and qualified deputy inspector of oils of the State of Ohio at Findlay. After this tank of oil thus branded and stamped reached Houston, Texas, Robinson drew a barrel from the same, and without having the said barrel after it was filled inspected, branded, and stamped by an inspector of oils for the State of Texas, sold said barrel to one of his customers.

By the first section of our statute with regard to oils it is expressly provided "that any of said fluids which have been inspected and branded according to the provisions of this act shall not again be subject to inspection."

One of the provisions of the third section of said act is: "It shall not be necessary to inspect *one* which has been inspected under a law of another State." "From the subject matter of the act and the context of this proviso it is manifest that the word '*one*' was erroneously incorporated into the proviso instead of the word 'oil,' and that the intent and purpose of the Legislature was to exempt from inspection in this State oils which had been previously inspected under laws of another State." Ex Parte Robinson, 28 Texas Ct. App., 511.

Whilst it is conceded by the prosecution that the tank of oil as pur-
chased and received by relator had been legally inspected and branded in
Ohio, and that therefore the law did not require that said *tank* should
be reinspected in Texas, yet it is contended this construction only applies,
so to speak, to the *tank* as an "unbroken package," and that whenever
its contents were drawn off into other and smaller casks, barrels, or other
packages, such smaller receptacles or packages are required to be inspected
and branded before they can be legally sold.    This construction it is con-
tended necessarily follows from the language of the fifth section of the
Act of April 5, 1889 (General Laws 21st Legislature, page 123), which
reads as follows, viz.:

"Section 5.    It shall be the duty of the State Inspector, or of the deputy
district inspectors within their respective districts, when requested so to
do by the owner or the person having charge of the same, to promptly in-
spect any of said fluids contained in bulk, storage tanks, reservoirs, rail-
road tanks, or wagon tanks, by making a single test in the manner pre-
scribed.    *Provided*, that where such inspection is made the inspector
or his deputy making the same shall see the fluid so inspected placed in
the cask, barrel, or other package in or from which it is intended to be
sold, and properly brand such cask, barrel, or other package in the man-
ner hereinbefore provided for according to the degree of the fire test of
said fluid.    *And provided further*, that the terms 'casks,' 'barrels,' and
'other packages' as used in this act shall include wagon tanks."

We are of opinion that this section applies and has reference alone to
fluids which have been brought into this State without any previous in-
spection, and that it does not apply where there has been a legal inspec-
tion in the State from which it is shipped.    Where it has not previously
been inspected it is the duty of the inspector under section 5 to inspect
the same *when requested to do so by the owner or person in charge of the
same,* and to see it drawn off into the vessels or barrels "in which it is
intended to be sold" and to brand the same.    He is not required to see
oil in tanks which have already been inspected out of this State drawn off
into casks, barrels, and other receptacles or packages in which it is in-
tended to sell it; nor is he required to inspect or brand these latter ves-
sels or receptacles.

Under a law very similar in its provisions to ours the Supreme Court
of Missouri, discussing the question now under consideration, say: "We
fail to find anything in the statute which prohibits the transfer of the
fluids in whole or in part from a branded cask to an unbranded re-
ceptacle, or which prohibits the sale of it from such unbranded recep-
tacle.    Unless the law so declares it may be done.    Woodworth v. The
State, 4 Ohio St., 488; Cheadle v. The State, 4 Ohio St., 478.  The argu-
ment against this conclusion of most merit is that the detection of viola-
tions of the law will be rendered difficult.    This may be true to some

extent, but it is not the test by which the statute must be tried. The theory of the respondent would prevent oils designed for illuminating purposes in any other way than in branded packages, so that the consumer would be required to buy a whole package or none. The law does not prohibit breaking bulk after inspection for purposes of sale, and one inspection is sufficient; and we conclude the retail dealers may purchase from branded tanks and sell the same to consumers without any other or further inspection or branding." The State ex rel. Waters-Pierce Oil Company v. Baggott, 96 Mo., 63.

Our conclusion from the facts as presented to us in this case is that the relator has been guilty of no violation of the law in the premises, and that he has been illegally restrained of his liberty.

It is therefore adjudged by this court that the applicant, C. W. Robinson, be and he is hereby released and discharged from all further detention in custody by virtue or these proceedings and this prosecution, and his discharge is accordingly so ordered. It is further ordered that relator pay all the costs of this proceeding.

*Ordered accordingly.*

Judges all present and concurring.