# Hawkins *v.* Louisville & Nashville R. R. Co.

*Action for Fees for Reinspecting Oil.*

(DECIDED JAN. 30, 1906, 40 So. REP. 293.)

1. *Statutes; Construction.*—Effect must be given to every provision of a statute, if it can be done, in construing such a statute.

2. *Inspection; Reinspection of Oil in Packages Taken from a Large*

25

*Quantity.*—The local act, approved Feb. 27, 1901, (L. Acts 1900-01, p. 1252) relating to the inspection of miner's oil in Jefferson County, does not require or contemplate the reinspection of oil in packages taken from a larger quantity that has been properly inspected, unless the inspector has reason to suspect it is below the standard required by law, and in that event no fee is to be charged for a reinspection.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

This was an action by James F. Hawkins against the Louisville & Nashville Railroad Company to recover fees for inspecting oil, and was tried upon the following agreed statement of facts: "It is agreed by and between the plaintiff and defendant that James F. Hawkins is now, and was on the 14th day of September, 1904, and prior thereto, county inspector of miners' oil in and for the county of Jefferson, State of Alabama, having been duly appointed and qualified as provided by an act of the Legislature of Alabama, approved by the Governor on the 27th day of February, 1901 (Acts 1900-1901, p. 12-49), entitled 'An act to prevent the sale or use in the county of Jefferson of impure miners' oil or other. material that shall be used for illuminating purposes in mines, and providing for the inspection of miners' oils or other material used as a substitute therefor,' and this act is hereby specially referred to and made a part hereof as if fully set out herein; that on the 14th day of September, 1904, or prior thereto, the Standard Oil Company, a corporation engaged in the manufacture and sale of miners' oil at Birmingham, in Jefferson county, Ala., rebarrelled six barrels of minors' oil to be shipped to the persons or corporations named in the plaintiff's complaint, at different places in Jefferson county; that the said oil was intended for use as miners' oil and for illuminating purposes in the mines of Jefferson county, Ala. It is further agreed that the said barrels to be shipped to the Pratt Coal Company, at Mineral Springs, Ala., contained 50 gallons in one barrel and 51 gallons in another barrel; that said miners' oil to be shipped to the Sayer Mining Company, of Sayer, Ala., contained 48 gallons in one bar-

rel and 50 gallons in another barrel; that the said barrel
of miners' oil to be shipped to the Pratt Coal Company,
at Crocker, Ala., contained 52 gallons; that said barrels
of miners' oil to be shipped to the Pratt Coal Company,
at Arcadia, Ala., contained 49 gallons, and that all of
the said oil amounted to 300 gallons; and that said oil
was bought for use, and intended to be used by the per-
sons to whom it was to be shipped, as miners' oil and for
illuminating purposes in the mines of Jefferson county,
Ala. It is further agreed that the plaintiff found the oils
above described in the freight depot of the defendant
corporation, marked ready for shipment to the parties
above named, and that none of the barrels containing
miners' oil had been duly and carefully inspected or
marked, after the said oil had been placed in said bar-
rels, by the plaintiff, or by any one authorized by him
to inspect the same, and that upon discovery of said bar-
rels in said depot the plaintiff took possession of the
said barrels of oil and duly inspected the oil in the same,
as required by the said act of the Legislature heretofore
referred to; that this inspection by the plaintiff was made
on September 14, 1904, being the day following the dis-
covery of the said oils in the defendant's depot. The said
oils met the requirements specified by the act of the Leg-
islature, requiring the plaintiff to inspect the miners'
oils, and that plaintiff affixed, by stencil, on each of said
barrels, the words, 'Jefferson County Test 24 Degrees.'
Plaintiff attached the following statement in writing to
each of the said barrels: 'This package is held for in-
spector's fees, and any person removing the same with-
out first paying such fees will be guilty of a violation
of the law. Fees of inspector, 96 cents. This the 14th
day of September 1904. James F. Hawkins, C. O. In-
spector of Miners' Oils.' After due inspection of the said
barrels and the oil therein contained plaintiff attached
a tag, showing that they had stood the test for use as
miners' oils and for illuminating purposes in the mines
of Jefferson county, Ala., as required by law, and after
attaching the statement as required by law, and after at-
taching the statement to each barrel that it was held
for the fees of the inspector which was unpaid, the plain-

tiff notified the defendant not to remove the said barrels
or either of them without first paying the inspector's fees
due. The defendant refused to pay the said fees for in-
spection, but held said barrels at the depot for two or
three days, at which later time each of the said barrels
were shipped or taken by the defendant and delivered
to the parties to whom they were shipped, in Jefferson
county, Ala. It is further agreed that, when plaintiff
discovered the oil above mentioned at defendant's depot,
each of the said barrels had plainly stenciled on its head
the following words: "The contents of this package
taken from the tank inspected by the county inspector
of miner's oils under date of September 8th, '04'—which
the plaintiff then and there read. And it is further
agreed that on the 8th day of Sept., 1904, the plaintiff
did inspect a tank of oil for the Standard Oil Company,
and that the same was up to the test requirements pro-
vided for by the said act of the Legislature of Alabama,
and the plaintiff duly stamped said tank 'Jefferson
County Test 24 Degrees,' and dated the same September
8, 1904, and affixed his official signature thereto. And
it is further agreed that plaintiff was not present when
the oil was removed from said tank so inspected by him,
and that he had no knowledge before that the oil con-
tained in the said barrels in the defendant's depot had
been inspected, and no notice thereof, unless it be that
the words, 'The contents of this package taken from the
tank inspected by the county inspector of miners' oil,
under date of September 8th, '04' was notice to him that
it had been duly inspected by him. It is further agreed
that on September 8, 1904, when the plaintiff inspected
the tank of oil for the Standard Oil Company, that it
contained about 5,000 gallons of miners' oil, that he left
the premises of the Standard Oil Company, for whom
the same was inspected, and that he did not see the oil
removed from said tank, but that a part of it was placed
in the barrels found in the defendant's depot; and that
all the oil in the barrels, which was inspected by the
plaintiff and for which inspection fees this suit is
brought, was inspected in the tank on September 8, 1904,
for the Standard Oil Company, by the plaintiff, and that

[Hawkins v. Louisville & Nashville R. R. Co.]

the fees for the first said inspection in the tank were paid on the date of such inspection. The Standard Oil Company, by its agents, in the absence of an inspection of such oil, loaded a part of it from the inspected tank into the barrels in which it was found in the defendant's depot. It was not placed in these barrels in the presence of the plaintiff or any one authorized by him to act for him. It was so loaded without requesting him to be present when the oil was placed in the barrels wherein it was found; but after he was informed by the Standard Oil Company of its purpose to load said oil into barrels and to sell and deliver the same to customers for use for illuminating purposes in the mines of Jefferson county, without procuring further inspection thereof and without his knowledge that it was so loaded, or that it was the same oil he had inspected on the 8th day of September, 1904, for the Standard Oil Company, or that it would stand the test required by law and without the knowledge of these facts by any person representing him as inspector of such oils, unless the words stenciled on said barrels hereinbefore set forth imported such knowledge. Plaintiff, after discovering said barrels, made no inquiry of said Standard Oil Company or its agents as to whether or not said oil had been inspected, and made no effort to inform himself whether or not the same had been inspected. It is further agreed that the expenses to plaintiff in following up said barrels of oil and finding it and collecting the charges from the owners would exceed the sum of $6. The defendant was, on and prior to September 14, 1904, a public carrier for hire."

ROBERT N. BELL, for appellant.—The title of the act leads the mind directly to the purpose and legislative intent, and in the interpretation of the statute, the title may be used as a key, when the intent is otherwise ambiguous.—Endlich on Interp. of Stat. § 59; *Cornell v. Cayne*, 192 U. S. 418; *U. S. v. McCrary*, 119 Fed. 861; *Rosin v. Ledgerwood*, 89 App. Div. (N. Y.) 245; *Shaffer v. Shaffer*, 99 N. W. 482. This act being an act to prevent the sale of impure miner's oil, should be so construed as to permit the officer to carry out this pur-

pose. The rules of interpretation must yield to the legislative intent and the intent made effective.—*State v. Polk*, 92 N. W. 216; *Kelly v. Gage*, 93 N. W. 193; *State v. Armour*, 47 S. E. 411; *Springfield v. Starke*, 93 Mo. App. 7. If there are two sections of the act in conflict the court will give effect to the last in order as the last expression of the legislative will; so if there is a conflict between section 3 and section 10 of the act under consideration, the last section will control.—*Hand v. Stapleton*, 135 Ala. 156; *State v. Wilson*, 136 Ala. 114. The court will construe statutes to avoid absurdity and hardships which were not clearly within the legislative intent.—Endlich on Stat. § 295; *Tsoisim v. U. S.*, 116 Fed. 920; *Logan v. Tomohan*, 95 N. W. 812; *Old Dominion v. Sohn*, 46 S. E. 222; *Turnguist v. Cross*, 92 N. W. 852. Giving section 10 its proper field of operation, the duty was on the officer to make reinspection and he is entitled to. pay therefor.—*Muback v. Schaefer*, 91 N. W. 956; *Woods v. Armstrong*, 54 Ala. 154.

Tillman, Grub, Bradley & Morrow, for appellee.—The brief contains a lengthy discussion of the act by sections and the proper construction thereof, and for the interpretation of the statute cite the following authorities.—*Woodworth v. State*, 4th Ohio State Reports, 488; *Cheadle v. State*, 4th Ohio St. Rep. 478; *State ex rel Waters-Pierce Oil Co. v. Baggot*, 8th So. Western 737; *Ex parte Robinson*, 15 So. Western 57; *State v. Finch*, 34 No. Western 904.

There is nothing in the statute which makes it penal to transfer the oil in whole or in part from the tank or cask which has been inspected and branded to an unbranded receptacle and sell it therefrom or therein without a reinspection.—*State v. Baggett*, 96 Mo. 63, 8 S. W. 737; *State v. Finch*, 34 N. W. 905; *Woodward v. The State*, 4 Ohio St. 488; *In re Robinson*, 13 S. W. 786; Bishop on Stat. Con. §§ 221, 225. A statute should be construed if possible, so as to give effect to every clause and not to place one provision in conflict with another.—*Lehman v. Robinson*, 59 Ala. 219; *Ex parte Dunlap*, 71 Ala. 73; *Landford v. Duncan*, 79 Ala. 594.

DENSON, J.—The question to be determined in this case is whether or not the oil inspector of Jefferson county is entitled to compensation for a voluntary second inspection of miners' oil contained in unstamped barrels, but filled with oil from a tank which had before such filling been tested and stamped, as required by law. The act, local to Jefferson county, is entitled, "An act to prevent the sale or use in the county of Jefferson of impure miners' oil or other material that shall be used for illuminating purposes in mines, and providing for the inspection of miners' oils or other material used as a substitute therefor." The act was approved February 27, 1901, and is found in the Acts of 1900-01, at page 1249.

The facts of the case, briefly stated, are, that the plaintiff, who was the oil inspector, found six barrels of oil in defendant's depot in Birmingham, consigned by the Standard Oil Company to various purchasers, and to be used for illuminating purposes in the mines of Jefferson county. Each of the barrels had plainly stenciled on its head the words: "The contents of this package taken from the tank inspected by oil inspector of miners' oil, under date of September 8th, 1904." These words the inspector (plaintiff) saw and read before he inspected the contents of the barrels. All the oil in the barrels was on the 8th day of September, 1904, contained in a 5,000-gallon tank at the warehouse of the Standard Oil Company in Birmingham. The tank of oil was on that date inspected by the inspector, it conformed to the standard required by the act, and was duly stamped by the inspector as required by the act. The fees for this inspection were paid to the inspector on the date of the inspection. The Standard Oil Company loaded the oil so inspected from the tank into the barrels in which it was found in defendant's depot. The inspector was not present when the barrels were loaded, and he was not requested to be present; but the oil was loaded by the company into the barrels after he was informed by the company of its purpose to load the oil from the tank into barrels and to sell and deliver the same to customers for use for illuminating purposes in the mines of Jef-

ferson county, without further inspection or stamping. The inspector, when he found the oil in the defendant's depot, inspected the oil in the barrels, it conformed to the requirements of the act, and he affixed his brand to each of the barrels; the inspection was made voluntarily. After the barrels had been inspected and stamped, the inspector notified the defendant, which was a common carrier, not to remove the oil without paying the inspector's fee; but it disregarded the notice and delivered the barrels to the consignees.

Section 2 of the act provides that all miners' oils or other material used as a substittue therefor shall be inspected, and provides how the inspection shall be made. Section 3 provides for the election of a county inspector of miners' oils and empowers him to appoint as many assistants as he may deem necessary. It requires that the inspector and his associates shall inspect the quality of all oil or other material offered or intended to be offered for sale, to be used for illuminating purposes in the mines of Jefferson county. It further requires that, if upon making the test required the oil shall meet the requirements of the act, the inspector shall brand the vessel containing the oil with the words, "Jefferson county test —— degrees," with the number of degrees at which the oil bore the test provided, and the date of the inspection, after which it shall be lawful for any manufacturer, vender, or dealer to sell the same in the county of Jefferson, for illuminating purposes in the mines of said county. It further provides that, if the oil shall not meet the requirements, the inspector shall mark by stencil, label, or brand in plain letters, on any package, tank, barrel, or other vessel containing the same, and by a stamp or label subscribed with his official signature the words, "Rejected for illuminating purposes in the mines of Jefferson county," giving the date of such inspection, and it shall be unlawful for the owner or person in possession thereof to sell such oil so branded as rejected, to be consumed within the county for illuminating purposes in mines, etc. Section 10 of the act is in the following language, to-wit: "Be it further enacted, that every package, cask, barrel, or other

[Hawkins v. Louisville & Nashville R. R. Co.]

vessel containing miner's oil, or substitute therefor, shall be duly and carefully inspected and the same shall not be marked as approved until the material therein shall have been inspected as hereinbefore provided. Any inspector or assistant who shall violate the terms of this section shall be removed from office by the appointing board when the offense has been proven to the satisfaction of such appointing board." Section 12 of the act provides that the inspector as compensation for his services shall receive three-fourths of a cent per gallon if inspection is made in quantities in bulk not less than 5,000 gallons. If inspected in bulk in less quantities than 5,000 gallons, one cent per gallon; if inspected in barrels or other vessels other than tanks, two cents per gallon. The section further provides that the articles inspected shall be held subject to the payment of the fees which shall be a lien on the oil or other material inspected, whether in the hands of carrier, agent, or owner.

The express declaration of the third section, that after the oil is inspected and the package, cask, tank, barrel, or other vessel containing the oil is stamped as required by law it shall be lawful to sell said oil, would seem to convey the idea that it was not the intention of the Legislature that there should be a reinspection of the oil when, for convenience in vending, or for the purpose of vending, the oil is loaded into other and smaller vessels. Taking the facts of the case in hand, it is a matter of common knowledge that a tank of oil containing 5,000 gallons, unless fixed on a railroad car, could not be transported, and it could not become a subject of commerce without being reloaded into smaller vessels. The Legislature must have realized these facts, when it provided for inspecting the oil in bulk without any limitation as to quantity, and when it expressly provided that when so inspected and branded the oil contained therein became a legitimate subject of commerce and use. There is no provision of the act which can be pointed to as prohibiting emptying the contents of a tank of oil after it has been properly inspected and branded into another unbranded vessel and selling the oil therefrom. Such a construction of the statute would

require every change of the oil from one package or vessel to another to be reinspected.—*State v. Finch,* (Minn.) 34 N. W. 904; *State ex rel. Waters Oil Co. v. Baggot,* (Mo. Sup.) 8 S. W. 737; *Ex parte Robinson,* (Tex. App.) 15 S. W. 603; *Waters v. State,* (Ark.) 18 S. W. 57.

Appellant hinges his right to recovery upon section 10 of the act; his contention being that that section controls the previous provision of the act, and requires an inspection of every package, cask, barrel, or other vessel containing miners' oil, irrespective of the fact that the oil in the vessels may have been previously inspected by the inspector in Jefferson county; and he argues that the inspector may not be required to inspect every vessel without compensation for each inspection. In construing a statute it must be so construed as to give effect to every clause, if it can be done.—*Ex parte Dunlap,* 71 Ala. 73. Section 7 of the act, which requires the inspection of oil within two days after its receipt in the county, makes no mention of an inspection of each vessel in which the oil is contained, and limits the penalty for violation to a willful failure to comply with its provisions. We have seen that section 12 provides the compensation for inspection of oil in quantities in bulk not less than 5,000 gallons, and that section 3 provides that after the inspection has been made and the vessel branded the oil may be sold; while section 4 penalizes the sale or attempt to sell oil for consumption in the mines of the county before having the same inspected as provided in the act. In section 11 of the act is found the only reference to reinspection of oil. It provides that the inspector shall have the power to reinspect any miner's oil or substitute therefor in said county which he has reason to suspect is below the standard required by law, provided no fee shall be charged for such inspection. Construing the act as a whole, we are of the opinion that section 10 does not apply to oil previously inspected in tanks or other vessels and loaded into barrels or other vessels to be shipped to retailers in the county, as the oil in this case was. The effect or office of section 10 is to enjoin upon the inspector the duty of seeing that no

miners' oil offered or intended to be offered for sale in the county shall escape inspection, and that the inspection shall be made with care. And it prohibits the inspector from marking the packages, cask, barrel, or other vessel containing the oil approved until it shall have been duly and carefully inspected, under penalty of removal from his office upon satisfactory proof being made of a violation of the law.

Our conclusion on the agreed statement of facts is that the oil in the barrels was not subject to reinspection, that the inspector was not entitled to fees for the second inspection, and that the judgment was properly rendered for the defendant.

There is no error in the record, and the judgment must be affirmed.

McCLELLAN, C. J., and DOWDELL and SIMPSON, JJ., concur.